WILLIAM W. McCLENCH, administrator with the will annexed, *vs.* CAROLINE WALDRON & others.

Hampden.    September 28, 1909. — February 21, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Devise and Legacy.    Words,* "Equally," "Or."

The will of a testatrix contained many small specific and pecuniary bequests, and disposed of the real estate of the testatrix as follows: " The furnished house in which I live I give to my brother Oliver's children and heirs. When disposed of to be divided equally." It also contained the following clause, which was the subject of a bill for instructions: " After bequests are paid all

bank books and stocks I give to living children or heirs of my brother Oliver including Caroline widow of Orrin D. Waldron and Waldron Sharpe son of Mary (Waldron) Sharpe deceased to be divided equally." The testatrix left no heirs other than the children and heirs of her brother Oliver. When the will was made and at the time of the death of the testatrix there were four living children of her brother Oliver, two of whom had children, and two other children of her brother Oliver had died leaving issue then surviving. One of these deceased children of Oliver thus leaving issue was Orrin D. Waldron and the other was Mary (Waldron) Sharpe. There was nothing in the will to indicate that the testatrix intended to prefer any branch of her brother Oliver's family to any other branch, and every grandchild of her brother Oliver was mentioned in some way as a recipient of her bounty. *Held*, that the clause should be interpreted as if there were added at the end of it the words " they taking *per stirpes* by right of representation, except that the share which Orrin D. Waldron would have taken, if living, shall be divided among his widow and children as his intestate property would be divided under the statute of distributions."

When the word " equally " is used in a will to describe a distribution of property among the children and heirs of a certain person as a class, it means that the distribution shall be made *per stirpes.*

In the interpretation of a will the word " or " may be held to mean " and " when this is necessary to give effect to the obvious meaning of the testator.

KNOWLTON, C. J.    This is a bill in equity filed in the Probate Court by the administrator with the will annexed of the estate of Adaline D. Waldron, deceased, for instructions as to the meaning of a clause in the will.    After an appeal from the decree of the Probate Court the case was heard before a single justice, and by him reserved for the consideration of the full court.    The clause in question is as follows:  " After bequests are paid all bank books and stocks I give to living children or heirs of my brother Oliver including Caroline widow of Orrin D. Waldron and Waldron Sharpe son of Mary Waldron Sharpe deceased to be divided equally."

When the will was made, and at the time of the death of the testatrix, there were four living children of her brother Oliver, namely, Georgeanna M. Waldron, John H. Waldron, Benjamin F. Waldron and Edward P. Waldron.    Two of these were married and had children and two of them were unmarried.    Two other children of this brother Oliver had previously deceased leaving no issue, and two, Orrin D. Waldron and Mary Waldron Sharpe, had deceased leaving issue then surviving.    Oliver P. Waldron, Carrie A. Waldron and Annie E. Trist were the three children of Orrin D. Waldron, who also left a widow Caroline Waldron.    F. E. Waldron Sharpe was the

son of Mary (Waldron) Sharpe.    There were no other descendants or heirs of Oliver Waldron, and these surviving descendants of Oliver were the only heirs of the testatrix.

The clause to be construed was drawn with little regard to the rules of law, and it is so inaccurate in the phraseology used to express the intention of the testatrix as to leave her meaning, in some particulars, very doubtful.    The will was written by a woman who was not learned in the law, and we are compelled to ascertain the intention of the testatrix as well as we can from the language used, considering also the circumstances under which she used it.    The will contains many small specific legacies of furniture, pictures, articles of personal adornment and wearing apparel to her relatives and friends.    There are twenty separate bequests of this kind.    Five hundred dollars is given to a cemetery association.    Pecuniary bequests of $100 each are given to most of the grandchildren of her brother Oliver, and to another is given a bank book standing in her name.    To Georgeanna M. Waldron, the daughter of her brother Oliver, is given another bank book standing in her name.    It does not appear from what sources the deposits in these bank books were derived. One legacy of $50 and three legacies of $100 each are given to persons who do not appear to be relatives of the testatrix.

After the gift of all these pecuniary legacies, we come to the clause in question.    Immediately following it is this language : " The furnished house in which I live I give to my brother Oliver's children and heirs.    When disposed of to be divided equally."    The word " equally," when used in a devise of this kind, means that the property is to be divided among the children and heirs *per stirpes,* they taking by right of representation.    *Allen* v. *Boardman,* 193 Mass. 284.    *Thompson* v. *Thornton,* 197 Mass. 273.    After disposing of all pecuniary bequests, the testatrix approaches the important part of her property, — first the bank books and stocks, and then the real estate.    Taking the will altogether, there is nothing in it to indicate that she intended to prefer any branch of her brother Oliver's family to any other branch of it.    Every grandchild of her brother Oliver is mentioned in the will as a recipient of her bounty.    While, by reason of the greater number of grandchildren in some of the families than in others, and by reason of the gifts of bank books

described as standing, one in the name of a daughter and the other in the name of a granddaughter of Oliver, and perhaps for other reasons, these pecuniary bequests that were to be paid before the division of the proceeds of the bank books and stocks are not exactly equal, the whole scheme of the will indicates that, in general, she had for all these heirs the usual regard and affection of a near relative for persons of her own blood. The two general and substantial gifts to heirs as a class, end with the same words "to be divided equally." In one clause the words are "living children or heirs," in the other they are "children and heirs."

Coming back to the language to be construed, she says: "I give to living children or heirs of my brother Oliver . . . to be divided equally." It is contended that the words "or heirs of my brother Oliver including Caroline widow of Orrin D. Waldron and Waldron Sharpe son of Mary Waldron Sharpe deceased" were to have effect only in the possible event that there were no children of Oliver living when the will should become operative, and that, if the four children living when the will was made, or any one of them, should be living at the death of the testatrix, none of the other heirs would take anything. We are all of opinion that this was not her meaning. Under this construction of the clause, since the gift to living children is to a class as it exists at the death of the testatrix, if there was then but a single survivor of the class, he or she would take all this property, to the exclusion of the other members of the class and of all the other five branches of Oliver's family represented by descendants living when the will was made. This seems inconsistent with the general indications of her purpose. The language of the last part of the sentence implies that these heirs were all to share in the distribution. When it is necessary, in order to give effect to the obvious meaning of a testator, the word " or " is often held to mean " and." If it is given that meaning here, we are free from all difficulty, except as to the share of Caroline, the widow, in the division. The heirs referred to are heirs of the brother Oliver, not heirs of the children living when the will takes effect, and the division must be made among them *per stirpes*, the living children taking their proper share with the others.

It would seem as if the testatrix, when she came to the general distribution of the residue, first used the expression "living children," and then, thinking of the children of deceased children, to correct herself added " or heirs," in the sense of " or rather heirs." In thinking of these representatives of the two deceased children, it occurred to her that the widow of Orrin D. Waldron should be included, although she would not be an heir of Oliver. Then she thought of the child of Oliver's deceased daughter Mrs. Sharpe, and although he would be included among the heirs without express mention, she referred to him by name. Her reason for doing this does not appear. Very likely it was because she wished to make it plain that he was in her thought; for she had not previously mentioned him, and every other one of Oliver's grandchildren had been referred to by name in the will as the recipient of a small legacy.

It is doubtful what share she wished Caroline the widow to receive in this distribution. We have already seen that the term " equally " used here, means taking *per stirpes* by right of representation, according to the statute of distributions, and it seems most probable that she intended her, as a member of her deceased husband's family, to take as a statutory heir or distributee of her husband, and to receive the same share of that which he would have received if living, that she would take of any personal property that he left for distribution under the statute.

A majority of the court are of opinion that the clause should be construed as if there were added at the end of it the words, " they taking *per stirpes* by right of representation, except that the share which Orrin D. Waldron would have taken, if living, shall be divided among his widow and children, as his intestate property would be divided under the statute of distributions."

*So ordered.*

The case was argued at the bar in September, 1909, before *Knowlton,* C. J., *Morton, Hammond, Sheldon,* & *Rugg,* JJ., and afterwards was submitted on briefs to all the justices.

*W. S. Robinson,* for Caroline Waldron and others.

*C. E. Bell,* for John H. Waldron and others.

*H. G. Whitman,* guardian *ad litem* for Waldron Sharpe.