### JOSEPH C. GAYNOR'S (dependent's) CASE.

Suffolk.   January 13, 1914. — February 27, 1914.

Present: RUGG, C. J., BRALEY, SHELDON, & CROSBY, JJ.

*Workmen's Compensation Act.   Words, "Casual," "Or."*

Under St. 1911, c. 751, Part V, § 2, which provides that the word "employee" as used in the workmen's compensation act "shall include every person in the service of another under any contract of hire, express or implied, oral or written, except one whose employment is but casual, or is not in the usual course of the

trade, business, profession or occupation of his employer," the employment by a caterer of a waiter to serve at a banquet to be given at a certain town, going to and returning from that town on the day of the banquet, is "but casual," and such waiter, if injured after having gone to the town in question and while assisting in preparing to serve the banquet, is not entitled to compensation under the act, although his injury was sustained in "the usual course of the trade . . . of his employer."

APPEAL from a decree of the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board.

The case was heard by *Pierce*, J. The facts found by the Industrial Accident Board are stated in the opinion. The judge made a decree affirming the decision of the Industrial Accident Board and ordering that the insurer should pay to Emma G. Gaynor, as the dependent widow of Joseph C. Gaynor, the sum of $7.50 a week for a period of three hundred weeks from the date of his injury, October 9, 1912. The insurer appealed from the decree.

*G. L. Dickson*, for the insurer.

*E. M. Sullivan* (of Rhode Island), for the dependent widow.

RUGG, C. J. The facts in this case are that the deceased employee was a waiter employed, at the time his injuries were received, by T. D. Cook and Company, Incorporated, a caterer, having a regular place of business in Boston. It had a contract to serve a banquet at Mount Holyoke College, South Hadley, on October 9, 1912, and on the day before engaged the deceased for service at that banquet. Its agent told the deceased that if he would report at the South Station in Boston the next morning, he could go to South Hadley at its expense with the other waiters. The wage for the service was to be $4, together with transportation from Boston to South Hadley and return. The deceased reported at seven o'clock on the morning of October 9, reached South Hadley at half past eleven o'clock on the forenoon, and was injured while preparing to serve the banquet. This was the first time he had ever worked for this employer. The work was finished at five o'clock in the afternoon, and the decedent then would have been entitled to $4 and would have been at liberty either to return to Boston at the expense of his employer or to go elsewhere on his own account. It was a part of the regular business of the employer to provide and serve banquets, but for such service no

men were regularly employed. The custom of the catering business is that such banquets are served by waiters secured for the particular occasion. Such a waiter might work for different employers on the same day, or for many different employers on successive days. The point to be decided is whether the deceased was an employee as defined in the workmen's compensation act, St. 1911, c. 751, Part V, § 2, as follows: "'Employee' shall include every person in the service of another under any contract of hire, express or implied, oral or written, except one whose employment is but casual, or is not in the usual course of the trade, business, profession or occupation of his employer."

The crucial words to be construed are those contained in the exception out of the class of employee of "one whose employment is but casual." The word "casual" is in common use. Its ordinary signification, as shown by the lexicographers, is something which comes without regularity and is occasional and incidental. Its meaning may be more clearly understood by referring to its antonyms which are, regular, systematic, periodic and certain. The significance of this exception in our act is emphasized by its contrast with the provisions of the English act, which is different in a material respect. As is pointed out in *Hill* v. *Begg*, [1908] 2 K. B. 802, at 805, its words descriptive of the workman are not, one whose employment is but casual, but one "whose employment is of a casual nature, and . . . otherwise than for the purposes of the employer's trade or business." This difference in phraseology cannot be treated as unintentional, but must be regarded as deliberately designed. See Report of Massachusetts Commission on Compensation for Industrial Accidents, 53. Manifestly its effect is to narrow the scope of our act as compared with the English act. No one whose employment is "casual" can recover here, while there one whose employment is "of a casual nature" comes within the act provided it is also for the purpose of the employer's trade or business. It is possible that a distinction as to the character of the employment may be founded upon the difference between the modifying word "casual" used in our act, and the words "of a casual nature" in the English act. The phrase of our act tends to indicate that the contract for service is the thing to be analyzed, in order to determine whether it be casual, while in the English act the nature of the service ren-

dered is the decisive test. This distinction appears to have been made the basis of decision in *Knight* v. *Bucknill*, 6 B. W. C. C. 160; *S. C.* 57 Sol. J. & W. R. 245. This consideration is to be noted because the English act was followed closely in many respects by our act, and hence even slight differences of phraseology may be assumed to have significance.

But even the decisions under the English act are plain to the effect that employment such as that which existed in the case at bar there would be treated not only as casual in the respect of the contract for hiring, but also casual in its nature. In *Hill* v. *Begg*, [1908] 2 K. B. 802, the employment of one who cleaned the windows of a private dwelling house whenever needed at irregular intervals of about six weeks, for a period of two years, but without regular engagement, was held to be "of a casual nature." See also *Rennie* v. *Reid*, 45 Sc. L. R. 814, and *Ritchings* v. *Bryant*, 6 B. W. C. C. 183, where the facts were similar and like decisions were made. One who had been employed at several different times to do odd jobs about small cottages, and who at the time in question was hired to whitewash some of them at a fixed price for the whole work, was treated as plainly a casual laborer in *Bargewell* v. *Daniel*, 98 L. T. (N. S.) 257. One employed to cut a hedge for a gross price was held to be a casual laborer in *Tombs* v. *Bomford*, 106 L. T. (N. S.) 823. To the same effect are *Knight* v. *Bucknill, ubi supra; Johnston* v. *Monasterevan General Store Co.* 42 Ir. L. T. 268; *S. C.* [1909] 2 Ir. R. 108; *Cotter* v. *Johnson*, 45 Ir. L. T. 259. See also *O'Donnell* v. *Clare County Council*, 47 Ir. L. T. 41, 43; *M'Carthy* v. *Norcott*, 43 Ir. L. T. 17.

It is argued that "or" in the clause quoted from Part V, § 2, should be construed to mean "to wit" or identity with or explanation of that which goes before. Sometimes it is necessary to attribute this signification to the word in order to effectuate the plain legislative purpose. *Commonwealth* v. *Grey*, 2 Gray, 501. *Brown* v. *Commonwealth*, 8 Mass. 59. It often is construed as "and" in order to accomplish the intent manifested by the entire act or instrument in which it occurs. This frequently is necessary in the interpretation of wills. *McClench* v. *Waldron*, 204 Mass. 554, 557. *Clarke* v. *Andover*, 207 Mass. 91, 96. It is not synonymous with "and" and is to be treated as interchangeable with it only when the obvious sense requires it, or when otherwise the mean-

ing is dubious. But the word "or" in its ordinary use and also in accurate meaning is a disjunctive particle. It marks an alternative and not a conjunctive. It indicates one or the other of two or several persons, things or situations and not a combination of them. *Commonwealth* v. *Keenan*, 139 Mass. 193. *Galvin* v. *Parker*, 154 Mass. 346. *Dumont* v. *United States*, 98 U. S. 142. It is construed as having a different meaning only when the context and the main purpose to be accomplished by all the words used seems to demand it. This is not such a case. It is impossible to say that the Legislature did not intend to employ the word in its common significance. Indeed, from what has been said, and especially from the deliberate use upon this point of different words from those of the English act, which our act follows in so many particulars, the opposite conclusion is necessary.

It would be difficult to conceive of employment more nearly casual in every respect than was that of the employee in the case at bar. The engagement was for a single day and for one occasion only. It involved no obligation on the part of the employer or employee beyond the single incident of the work for four or five hours at the college. That would have had its beginning and ending, including the outward and returning journeys (but for the unfortunate accident), within a period of less than twenty-four hours. The relation between the waiter and the caterer had no connection of any sort with any events in the past. Each was entirely free to make other arrangements for the future, untrammelled by any express or implied expectations of further employment. The employment was not periodic and regular, as in *Gillen's Case*, 215 Mass. 96, and in *Dewhurst* v. *Mather*, [1908] 2 K. B. 754. It was in the course of the regular business of the employer. But under our act that is an immaterial circumstance in view of the other fact that the employment was "but casual." The conclusion seems irresistible that the employment of the deceased was "but casual" within the meaning of those words in our act.

*Decree reversed.*