## J. B. BRANCH, Trustee, *vs.* J. WINTHROP DEWOLF.

### DECEMBER 3, 1915.

PRESENT:   Johnson, C. J., Parkhurst, Sweetland, Vincent, and Baker, JJ.

*(1)   Wills.   Equitable Conversion.*

Testator devised his house to his wife for life, then to his niece for life, then to a grandnephew, upon condition that he took the name of testator, but if he rejected the condition, the house was to be sold, the proceeds to be thrown with the personal property and the whole divided between the sisters of testator if alive, or their heirs, if dead, in equal proportions.

*Held,* that upon rejection of the condition by the nephew the whole fund remaining for distribution would be regarded as personal property even though the house had not yet been sold, under the doctrine of equitable conversion.

*(2)   Wills.   Vested and Contingent Interests.   Bequests.*

At the time of execution of the will, testator had two sisters.   One died before testator and the other deceased before the time set for the distribution of the fund, which was to be divided upon the rejection of the devise by the nephew.

*Held,* that the gift in the clause "the whole to be divided between my sisters, if alive, or their heirs, if dead, in equal proportions" was not vested until after the death of the last life tenant and the rejection of the devise by the nephew.

*Held,* that the word "heirs" was a word of purchase and not of limitation, the gift to the heirs being substitutional, there being nothing to show that the word "or" was not intended to have its usual significance.

*(3)   Wills.   Heirs.   "Between."*

In the above case it was the intention of testator that the "heirs" of each sister should take the one-half to which each sister would have been entitled, for "between" properly refers to two and not more.

*(4)   Wills.   Construction.   Equal Proportions.   "Heirs."*

In the above case the words "in equal proportions" are satisfied as applicable to the equal division of the fund between the two classes of heirs, and grandchildren of the sisters take by representation *per stirpes* the share their parent would have taken if living and not *per capita.*

*(5)   Wills.   Construction.   "Heirs."*

In the above case, the word "heirs" was not used in a technical sense, but as the estate to be divided was in the form of personalty, it would be held to mean those entitled to succeed to personal property in case of intestacy.

*(6)   Wills.   "Heirs."   Time of Vesting of Estate.*

In the above case the word "heirs," means the heirs of testator's two sisters·
    who were in being at the time of the rejection of the devise by the nephew
    after the death of the last life tenant, the will showing the intent of the
    testator to fix that time for ascertaining the "heirs" ·who would then be·
    entitled to distribution of the fund.

BILL IN EQUITY for construction of will.

PARKHURST, J.   This is a bill in equity filed in the·
Superior Court in Providence by John B. Branch, a trustee
under the will of John Winthrop, late of Newport, R. I.,
deceased, for the construction of said will, and has been
certified to this court for its determination under the pro-
visions of Chapter 289, § 35 of the General Laws (1909).

John Winthrop died domiciled in Newport, R. I., on
March 12, 1886, leaving a will which was duly admitted to
probate.   The provisions of this will so far as they are of
importance in this case are as follows:

"My property is worth about $65,000 consisting of my
house in Newport with its contents; $42,000 A & C Bonds
in the hands of Mess R. & A Lancaster & Co 66 Bd'way
N. Y.—about $7,000 L & Impt Co with the same; &
about the same amount money loaned to J. H. de Wolf
my nephew—My house with everything I give to my true
hearted, faithful wife & loving & beloved friend S. Katharine
Winthrop during her life, at her death I give this property
to my niece Lizzie de Wolf (as it will then stand) during
her life.—At her death I give this same property to the
oldest son of my oldest nephew Winthrop de Wolf, lately
dec^d, on condition of his taking & bearing the sole name of
John Winthrop, and fur-ther that he shall not dispose or
alienate it during his life,—out of the income it is my will
that Twenty four hundred dollars shall be paid to my wife
in semiannual payments of twelve hundred                    ,
and $200 per annum to keep the house in order—At the
death of my wife, I will that the same provision out of the·
income for my niece Lizzie de Wolf shall be made.   In

both instances this payment to be made first & foremost & under all circumstances. This to be in lieu so far as Lizzie is concerned of my next provision in her favor, which is that during the life of my said wife Katharine, the said Lizzie de Wolf is to be paid out of the income, $800. pr. Ann. in semiannual payments of $400 each—This I do after consultation with her mother & herself—To my sister Adelaide I give $400 in semi-annual payments dur-ing her life—In case these sums aggregate $3,400, and should the income exceed this, which I think it will, then the surplus is to be divided between my aforesaid niece in the same proportions of 8 to 4 with my sister Adelaide—In case of the death of either to go as they may direct, and in default of any directions to their heirs in the female line as provided hereafter for my sister. At the death of my niece Lizzie de Wolf, it will be necessary for the parents or legal guard-ians of my said grand nephew to decide whether or not he will or not accept the bequest made to him, & upon the conditions named. Should he reject it, I direct that the "Shanty" my Newport cottage, be sold, with all its contents excepting the family portraits, and that the two Cop-leys be returned to Harvard University, unless my Executors should positively object; in which case their destination is left to my Executors unanimous decision.

"The proceeds are then to be thrown with the personal property, and the whole is to be divided between my sisters if alive; or their heirs, if dead in equal proportions. In case the cottage should stand in the name of my wife at her decease, I enjoin upon her to make such provisions as may be necessary for that pur-pose, so that it may pass into the possession of my said niece Lizzie de Wolf, according to the intent and meaning of this docu-ment.

"As money is paid into the hands of my executors trustees or managers of my estate I direct that it shall be invested in good dividend paying stocks & not in real estate."

There follow certain bequests of specific sums of money to various relatives and friends; the appointment of execu-

tors and the execution and witnessing of the will in legal form.

It thus appears that the general scheme of the testator was to provide for his wife for life, giving her a life estate in the only piece of real estate he owned, together with a fixed annual sum of $2,400 from the income of his personal estate for her support and "$200 per annum to keep the house in order;" then after the death of his wife to provide for his niece Elizabeth DeWolf for her life, in the same manner, with certain provision also for her during the life of the wife. After the death of these life-tenants the real estate is given to his grandnephew, oldest son of his "oldest nephew Winthrop de Wolf, lately dec$^d$, on condition of his taking & bearing the sole name of John Winthrop" &c., as above recited. This grandnephew, who is J. Winthrop DeWolf, one of the defendants who is before the court, has rejected and renounced this provision by statement in open court, under oath, during his examination as a witness in this case, saying that he is unwilling to comply with the condition annexed to the gift in the will.

It also appears by the allegations of the original bill filed May 15, 1915, all of which are admitted by the answers filed by the defendants, including J. Winthrop DeWolf, that "said J. Winthrop DeWolf has declined to take the sole name of 'John Winthrop,' and has rejected the gift in said will conditioned upon his so doing;" it is therefore to be assumed for the purposes of this case that the said J. Winthrop DeWolf signified his intention to reject said gift at some time between the death of Elizabeth DeWolf (February 25, 1915), when the gift to him became in force, and May 15, 1915; if he had not survived the said Elizabeth DeWolf he would of course have been unable to comply with the conditions, and the gift would have lapsed.

This rejection of this devise of the real estate brings into operation that clause of the will which directs that the Newport cottage be sold with all its contents (except certain portraits) and then further directs as follows: "The

proceeds are then to be thrown with the personal property and the whole is to be divided between my sisters if alive; or their heirs, if dead, in equal proportions." This clause of the will is the subject of the several questions relating to its construction which are propounded by the bill. The last life-tenant, Elizabeth DeWolf, died in Providence on the 25th day of February, 1915, and since J. Winthrop DeWolf is deemed to have rejected the gift of the real estate thereafter, and before May 15, 1915, the direction for its conversion into personal property and the distribution of the whole fund has become operative, and questions have arisen as will be hereinafter set forth as to such distribution.

It is to be noted that the Newport property was the only real estate of John Winthrop and that by the terms of his will his executors, who became trustees under his will, and to whom the complainant Branch is one of the successors, are directed to invest personal estate coming into their hands "in good dividend paying stocks, & *not in real estate;*" and that in the events which have happened, whereby the direction to convert the Newport property into money and add it to the personal property for distribution, has become absolute, it is manifest that the testator intended that there should never be any real estate to which his sisters or their heirs would become entitled. The whole fund therefore which now remains for distribution is to be regarded and treated as personal estate, even though the Newport real estate may not yet have been sold, under principles of equitable conversion too well settled to require discussion. (See *Koehne* v. *Beattie*, 36 R. I. 316, 328, and cas. cit.) It is clear that the testator, in the event of the rejection of the gift by his grandnephew, never intended that the Newport property should go to his "sisters if alive; or their heirs, if dead," as real estate, but that it was his plain intention only to give them the proceeds of the sale, together with other personal estate.

The will of John Winthrop was executed March 26, 1883. At that time the testator had two sisters, Annette H. DeWolf,

wife of John J. DeWolf, and Adelaide Augusta Vernon, widow of Thomas W. Vernon. Mrs. DeWolf died before the testator; and Mrs. Vernon died in 1888, about two years after the testator; so that neither of these sisters was alive at the time set for the distribution of the trust fund, which was to be divided after the termination of the life estate of Elizabeth DeWolf and after the rejection of the devise of the Newport estate by J. Winthrop DeWolf, and its conversion by sale and addition of the proceeds to the other personal property. Up to the time therefore of the death of Elizabeth DeWolf, and the rejection of the gift by J. Winthrop DeWolf, it cannot be said that the will shows any intention of giving either the corpus of the original personal estate or the fund derived from the sale of the real estate to anyone; for in the event that J. Winthrop DeWolf had elected to accept the devise of real estate and fulfil the conditions attached thereto, it cannot be said that the will contemplates the distribution of the personal estate to anyone. The gift in the clause under discussion, "and the whole is to be divided between my sisters if alive, or their heirs if dead, in equal proportions," is therefore contingent upon the rejection of the devise by J. Winthrop DeWolf, and never became vested in anyone until after the death of the last life-tenant, Elizabeth DeWolf, and upon the rejection of the devise by J. Winthrop DeWolf. Again the interest of the two sisters of John Winthrop is contingent both upon their surviving the life-tenant, Elizabeth DeWolf, and upon their surviving the rejection of the devise by J. Winthrop DeWolf. The gift is "between my sisters, if alive, or their heirs, if dead;" the testator having provided for his wife, his niece, Elizabeth, and his grandnephew (on condition), as the primary objects of his bounty, is plainly looking to the future as to the further distribution of his estate, intending that his two sisters shall have all that remains in the events which have happened, "if alive" at that time, as an absolute gift; if they are then dead, it is his plain intent to divide the fund between their "heirs." There is no evidence in the

language of the will of any intent to give his sisters or their heirs any present vested interest in the fund which shall ultimately be distributed. On the contrary, as we have seen, the fund to be distributed can only be ascertained after the death of the life-tenant and upon the rejection of the devise of real estate by his grandnephew and the consequent conversion thereof by sale and the addition of the proceeds to the other personal estate. And it is only upon the rejection of the devise of real estate that the division between his "sisters if alive; or their heirs, if dead" is to be made. It would be difficult to find a case where it is more plainly evident that futurity is in the essence of the gift.

Annette H. DeWolf had four children, Winthrop, who died in 1882, prior to the date of the testator's will; James A., who died in 1909, prior to the death of the life-tenant, Elizabeth; Elizabeth who died February 25, 1915 (the life-tenant); and J. Halsey, who died June 5, 1915, subsequent to the death of the life-tenant and also subsequent to the rejection of the devise by J. Winthrop DeWolf. James A., Elizabeth and J. Halsey died unmarried, leaving no lineal heirs. Winthrop, who died in 1882, left a widow, Eugenia (who died in 1903), and three children, J. Winthrop DeWolf, Halsey DeWolf and Agnes DeWolf, all of whom are now living and of full age and are parties respondent. The personal representatives of James A., Elizabeth and J. Halsey DeWolf are all parties respondent. It therefore appears that the only heirs of the said Annette H. DeWolf living at the death of the last life-tenant, Elizabeth DeWolf, and at the rejection of the devise by J. Winthrop DeWolf, were her three grandchildren, J. Winthrop, Agnes and Halsey DeWolf, and her son, J. Halsey DeWolf.

The other sister of the testator who survived him, and died in 1888, was Adelaide Augusta Vernon, widow of Thomas W. Vernon. She had three children, to wit: John W. Vernon, who died in 1902, leaving a widow, Amey Vernon, who still survives, and three daughters, Amey Vernon II, Anne T. Vernon and Adelaide W. Vernon; Adelaide Walcott,

who still survives; and Harriet W. Waring, who still survives, and is a person of unsound mind under guardianship, and is represented in this suit by a guardian *ad litem.* It therefore appears that the heirs of Adelaide Augusta Vernon, living at the death of the last life-tenant, Elizabeth DeWolf, and at the rejection of the devise by J. Winthrop DeWolf, were her three grandchildren, Amey Vernon II, Anne T. and Adelaide W. Vernon, and her two daughters, Adelaide Walcott and Harriet W. Waring.

The trustees having been advised that there was doubt as to the proper distribution of the trust fund filed this bill for a construction of the will and propounded five questions.

The first question propounded in the prayer of the bill is: "Whether the word 'heirs' in the aforesaid provision of said will should be construed merely as a word of limitation, so one-half of said property should be treated as if it had belonged to the said Annette H. DeWolf at the time of her decease, and the other half to the said Adelaide Augusta Vernon at the time of her decease, or whether said word 'heirs' should be construed as a word of purchase."

In answer to this question we have no doubt that the word "heirs" is used as a word of purchase and not of limitation. From the above preliminary discussion of the terms of the will and of the character of the interests thereby given, it is clear that it was not the intention of the testator to give any present interest in the property to his sisters or their heirs which would vest immediately upon his death. On the contrary it is beyond question that he gave them only a future possibility of an interest dependent upon the contingency of their survival (by using the words "if alive") and also upon the contingency of the rejection of the devise by J. Winthrop DeWolf, as it was only in that event that the trust fund became distributable under the terms of the will. The "heirs," if they take at all, take as purchasers under the will and not through the sisters of the testator. The gift to the heirs is obviously substitutional, there being nothing in the will to show that the testator did not intend

the word "or" to have its usual significance. 1 Redf. on Wills, pp. 486-487; *Wood* v. *Mason*, 17 R. I. 99, 102-103; *Greene* v. *Aborn*, 10 R. I. 10; *Rogers* v. *Rogers*, 11 R. I. 38, 80; *Guild* v. *Allen*, 28 R. I. 430, 436; *Gilmor's Estate*, 154 Pa. St. 523, 531-532 & cas. cit.; *Ebey* v. *Adams*, 135 Ill. 80.

Since the gift of the personal estate to the sisters was wholly contingent, and the gift to the "heirs" was both contingent and substitutional, as above shown, the heirs being purchasers under the will, there is no room for the application of the rule in *Shelley's Case* to which reference is made in the brief.

The second question is as follows: "(If the court should determine that said word 'heirs' should be construed as a word of purchase) whether said propery should be divided into halves, one-half to be distributed among the 'heirs' of the said Annette H. DeWolf and the other half among the 'heirs' of the said Adelaide Augusta Vernon; or whether the distribution should be made *per capita* among the 'heirs' of said sisters of the testator."

In answer to this question it was clearly the intention of the testator that if his two sisters had lived to take this gift, each should have taken one-half thereof. It seems to us equally plain that it was his intention that the "heirs" of each should take the one-half to which each sister would have been entitled. There is nothing in the will to show a contrary intent. It makes two classes of heirs; in the one class the heirs of Annette H. DeWolf, in the other class the heirs of Adelaide Augusta Vernon. Both classes were equally near to him in blood and no reason can be discovered why each class should not share "in equal proportions."

The decisions have not been quite unanimous on this subject (See *Bisson* v. *West Shore R. R. Co.*, 143 N. Y. 125); but it seems to us that the better reasoned cases have held as we have above indicated. The decisions of this court have been in accord with our views above expressed. To this effect is the holding in *Guild* v. *Allen*, 28 R. I. 430 (1907), expressed in the following language by Mr. Justice Johnson

(p. 436): "Where, however, the gift is to several persons or their children, the children will generally take *per stirpes*, the gift to them being substitutional."

Moreover, the word "heirs" carries in itself the idea of succession to the right of the ancestor, and the phrase "in equal proportions" has been held to denote equality merely between the two classes of heirs. In *Swinburne, Petitioner*, 16 R. I. 208 (1888), the residue was left to A, "the legal heirs of" B, and C, D and E, "share and share alike, to them, their heirs and assigns forever." The court held that the two children of B took together a single share as representing their father, DURFEE, C. J., saying (pp. 211-212): "They are mentioned not as children, but as 'heirs,' a word which carries in itself the idea of succession to the right or place of the ancestor. . . . The words 'share and share alike' are the only words which cause us any difficulty, for these words and the words 'equally,' 'equally between them,' and 'to be equally divided between them,' have been often construed to call for an equal division among all the persons entitled. But, as was remarked in *Balcom* v. *Haynes & others, supra*, 14 Allen 204, such a construction is not necessary, since the words 'may be satisfied by being applied to the division between the classes, and not to that between the individuals.' "

In *Bassett* v. *Granger*, 100 Mass. 348 (1868), the court in considering the following clause in the will of one Nancy Horton, "I give and bequeath all my personal property of every name and nature, after paying the foregoing legacies, to the heirs of my late husband and to my heirs equally," held (p. 349): "The residuary bequest of Nancy Horton 'to the heirs of my late husband and to my heirs equally,' upon its manifest intention, and according to the authorities, was a bequest in equal shares to two classes, which might, and, as to that class to which the plaintiff belonged, in fact did, include persons in different degrees of descent, and by which therefore the plaintiff, and the class of which he was one, took *per stirpes* and not *per capita*." See to the same

effect *Ross', Ex'r* v. *Kiger,* 42 W. Va. 402 (1896), and authorities cited therein.

A careful consideration of the sentence in question in the will of John Winthrop adds strength to this argument, for the arrangement of phrases in this sentence is not careful or exact. Thus the phrase "if dead" does not refer to the word "heirs," after which it is placed, but to "sisters." And it seems clear that the phrase "in equal proportions" also refers to the division between the sisters. The word "between" evidently refers to the gift to the "heirs," as well as to the gift to the "sisters." We think that in order more clearly to indicate the intention of the testator a proper rearrangement of the phrases would be: "The whole is to be divided in equal proportions between my sisters, if alive, or, if dead, between their heirs."

The fact that the testator has used only the word "between" indicates that the division in any event was intended to be into halves, for "between" properly refers to two and not more: "among" is the correct preposition to use for a larger number. To this effect are *Knutson* v. *Vidders,* 126 Ia. 511 (1905); *Ihrie's Estate,* 162 Pa. St. 369 (1894); *Records* v. *Fields,* 155 Mo. 314, 321-322 (1900).

The holding of the court in *Knutson* v. *Vidders, supra,* is expressed in the following extract from the opinion (p 516): "There is no merit in the contention of appellants that by the terms of the will of Hellick Quinsland a per capita distribution among the heirs of himself and his wife was intended. The language of the will is, 'to be divided equally between our lawful heirs on both sides.' Here is conveyed the thought that two parts were in contemplation—one to go to the heirs of the husband, and the other to the heirs of the wife. And this accords with the true etymological significance of the word 'between.'"

The will construed in *Ihrie's Estate, supra,* provided: "The residue of my estate is to be divided between my husband's grandchildren and the children of Ferdinand Poree." The court said (pp. 372-373): "Did she mean that

the fifteen grandchildren should take one half, and the four Porees the other half, or did she mean a division per capita,— one nineteenth to each?     The word 'between' refers properly to two, and not more." . . . "On a general view of the whole will we see no ground on which to give the word 'between' any other than its proper meaning, and according to that the grand children of Gen. Ihrie are 'one class, taking half, and the children of Ferdinand Poree another class taking the other half of the residuary estate."

We find, accordingly, that the property disposed of by the clause in question should be divided into halves, one-half to be distributed among the "heirs" of Annette H. DeWolf and the other half among the "heirs" of Adelaide Augusta Vernon.

(4)     The third question propounded in the prayer of the bill is: "Whether each grandchild of each sister who is a child of a deceased child of one of said sisters is entitled to as large a share as each of his uncles and aunts, or whether such grandchildren are entitled only to the share which his parent would have taken if living."

It has been already shown in the quotation from *Swinburne, Petitioner,* 16 R. I. 208, *supra,* that the words "in equal proportions" in this will "may be satisfied by being applied to the division between the classes, and not to that between the individuals." The general rule is nowhere better stated that in the full and well considered opinion in the case of *MacLean* v. *Williams,* 116 Ga. 257 (1902). In that case the will to be construed contained the following item: "I direct that two-thirds thereof be distributed in equal shares to such persons in life at the time of my decease who would then be the heirs at law of my deceased husband had he survived me, and that the other one-third be distributed in equal shares to my own heirs at law then in life." The court said (pp. 257, 258, 259, 263): "The question to be determined is, whether under this item those persons who answer to the description of heirs at law of the testatrix take per stirpes or per capita. The heirs at law

of a deceased person are those who are entitled to take the estate under the statute of distributions when the decedent dies intestate.  When the expression 'heirs at law' is used in a will, and is unaccompanied by any qualifying or explanatory language, there is but one place to which resort must be had to ascertain what persons are within the meaning of this descriptive term, and that is the statute of distributions.  Those falling within the description are entitled to the estate of the decedent, unless there is some law declaring to the contrary, or the decedent has died testate, and the language of the will is such as to indicate that the intention of the testator was that some other persons than those who would take under the statute of distributions should take, or, if under the will the estate goes to those who would take under the statute, the testator intends that they shall take in a different manner than that provided in the statute."  . . .  "It is the general rule that a devise to named individuals in equal shares would call for a per capita distribution, and that a devise to a class, such as 'all my nephews,' and the like, would also call for a per capita distribution.  When the words 'heirs at law' are used in a will, unless there is something to indicate a contrary intention, it is to be presumed that the testator intended not only that the persons taking should be those who would take under the statute of distributions, but that the quantum of interest of each should be what each individual would take under the statute.  Is the use of the expression 'equal shares' alone sufficient to overcome this presumption ?  The shares under the statute of distributions are equal.  As was said in *Odam* v. *Caruthers*, 6 Ga. 42, persons standing in unequal degrees are allowed to take per stirpes 'to fulfil the equity of the statute, which contemplates an equal distribution.'  If all the heirs at law stand in the same relation to the decedent, they take equally per capita.  If some stand in different degrees from others, they take per stirpes, but they take equally nevertheless.  The estate in either event is divided into shares, and equal shares, although

in the one case each share goes to an individual, and in the other case the equal shares go to a class of individuals."

. . . "We therefore reach the conclusion in the present case that, as there is nothing in the item of the will except the expression 'equal shares' to qualify the words 'heirs at law,' it is not plainly manifest from the terms of the item that it was the intention of the testatrix that her heirs at law should take per capita instead of per stirpes, as they would have taken under the statute of distributions if, she had died intestate."

In *McClench* v. *Waldron*, 204 Mass. 554 (1910), the court construed a clause leaving personal property to "living children or heirs of my brother, Oliver . . . to be divided equally," as a gift to the heirs *per stirpes* by right of representation, according to the statute of distributions.

The case of *Bisson* v. *West Shore R. R. Co.*, 143 N. Y. 125, while it seems to be contrary to these views, admits that the view expressed in the above cases is supported by authority; it finds from the "peculiar arrangement" of the clauses of the will that two sets of heirs are to be considered as one class, "to each individual of which was given an equal interest."

In *Daggett* v. *Slack*, 8 Met. 450, the same general rule is laid down as above set forth in *MacLean* v. *Williams*, *supra*, but it is said that the presumption that in a gift to "heirs" the persons entitled are to take per stirpes "will be easily controlled, by any words in the will, indicating a different intention of the testator; as if, after a devise to 'heirs,' it be added, 'in equal shares' or 'share and share alike,' or 'to them and each of them,' or 'equally to be divided,' or any equivalent words, intimating an equal division, then they will take *per capita*, each in his own right."

It may be observed with regard to *Daggett* v. *Slack*, *supra*, that it was concerned solely with a devise of real estate; that there were no words in the will regarding a division into "equal shares" or other equivalent words, and that part of the decision is strictly *obiter dictum*; and

it may be further observed that that case was not referred to in the later decision of *McClench* v. *Waldron*, 204 Mass. 554, *supra*, where the words "to be divided equally" were used in the will regarding distribution of personal estate, and where it is expressly said, p. 556, "The word 'equally,' when used in a devise of this kind, means that the property is to be divided among the children and heirs *per stirpes*, they taking by right of representation." See, also, *Pearce* v. *Rickard*, 18 R. I. 142, 149; *Guild* v. *Allen*, 28 R. I. 430, 436.

We are of the opinion that the words "in equal proportions" used in the will are satisfied as applicable to the equal division of the fund between the two classes of heirs, and that the grandchildren take by representation *per stirpes* the share their parent would have taken if living and not *per capita*.

(5)  The fourth question is: "Whether, as to said personal property, said word 'heirs' should be construed in the strict legal sense of the word 'heirs' (*i. e.* those persons who are designated by the statute as entitled to the real estate of an intestate), or whether said word should be construed to mean those persons who are designated by the statute as entitled to the personal property of an intestate."

It is to be noted that we have already held that the whole trust fund including the proceeds of the sale of the real estate is to be considered as personal property; no distinction is to be made because a portion of the fund is derived from the real estate which had been equitably converted.

On this question, this court has recently expressed its opinion. In *Quinn* v. *Hall*, 37 R. I. 56 (1914), the court held that the word "inherit" applied in a will to personal property was to be construed as "take under the statutes of distribution." The court made the remark (see p. 70) that "this particular will was not drafted in a precise or careful manner, nor with regard to the careful use of words, supposed to be used in a technical sense," which remark is also applicable to the will of John Winthrop. The majority opinion said (p. 71): "It is an established rule

of construction that where the estate to be divided is in the form of personalty the words 'heirs' or 'heirs at law' shall be held to mean those entitled to succeed to personal estate in case of intestacy;" citing many cases supporting this statement. And BAKER, J., although dissenting from the actual decision on one of the points raised, said (p. 84): "It is a well established rule of interpretation of wills as affected by the nature of the property that the word 'heirs' as applied to personalty primarily means next of kin or those persons who would take under the statutes of distribution in case of intestacy. And this rule applies when the will directs realty to be sold and the proceeds paid to the heir. 40 Cyc. 1464. The reason of this rule as applicable to the proceeds of real estate sold is that the testator equitably converts the realty and plainly intends that it shall go to the beneficiaries as personalty."

It is true that some cases hold the contrary view, and regard the word "heirs" to be merely *descriptio personarum.* See *Mason* v. *Baily,* 6 Del. Ch. 129, and cases cited.

We are content to stand by the decision in *Quinn* v. *Hall, supra,* which is amply supported by authority. Furthermore we find in this case that the question is rather academic than vital, since it appears that in the actual state of facts, the same persons who would be entitled to real estate, if there were any, would be entitled under our statute to the distribution of personal property. See Gen. Laws of R. I. (1909), Chap. 316, § 9, Clause Third.

One of the sisters of the testator, Annette H. DeWolf, died in 1884; and his other sister, Adelaide Augusta Vernon, died in 1888. Several of the persons who were heirs (and also next of kin) of each of these sisters at the time of her death died before the life-tenant, Elizabeth DeWolf; and Elizabeth DeWolf herself was one of the heirs and next of kin of Annette H. DeWolf. The prayer of the bill consequently propounds the following question, numbered V.: "Whether said word 'heirs' means the persons who were the 'heirs' of the said Annette H. DeWolf and Adelaide Augusta

Vernon, respectively, at the time of the decease of each of said sisters of the testator, or whether said word 'heirs' means the persons who would have been such 'heirs' had said sisters of the testator deceased contemporaneously with the said Elizabeth DeWolf."

We have already stated that in our opinion the interest of these "heirs" in the trust fund was contingent upon the rejection of the devise of the Newport real estate by J. Winthrop DeWolf, and that for the purposes of this case he is to be deemed to have rejected this devise after the death of Elizabeth DeWolf. We have also decided that the interests of the "heirs" under the will were contingent future possibilities and that the testator was plainly looking to the future in this disposition and had no intention to give any present or vested interests either to his sisters or to their heirs. In our view the answer to question V is found in the decision of the case of *DeWolf* v. *Middleton*, 18 R. I. 810; in that case the will after devising certain real estate to the testator's widow for life, provided "after her decease I do give and devise the same real estate to my two dear daughters, Charlotte and Maria, their heirs and assigns forever: *Provided, however*, that in case my said daughters, Charlotte and Maria, should die, leaving no surviving issue, then it is my will that the estate, on their decease, be divided among my heirs at law, according to the statutes of descents, their heirs and assigns forever; and I do devise the same accordingly;" and the fifth clause was a devise directly to the daughters named of his Hope Street estate in the same language as quoted from the second clause; except that for the words "on their decease" the words used are "on both of their decease." STINESS, J., in the opinion, laid emphasis upon the fact that the gifts to the heirs were not contingent remainders, but executory devises, and said (pp. 815, 816, 817): "While the general rule is that the heirs of a testator are to be taken from the time of his death, yet the rule gives way to a contrary intent to be found in the will. Assuming, then, that the cases referred to go no

further than this, we think that the will in this case shows such an intent. The property given to Charlotte or Maria is to go 'on their decease,' in the second clause, and 'on both of their decease,' in the fifth clause, to the heirs at law of the testator. In making such a gift his mind would naturally look forward to the time when the estate might vest in possession, and so the words used comport with an intent to point out the time and mode of ascertaining who the heirs will be, by designating a class to take as executory devisees. The agreed facts also point to such an intent. . . . "Moreover, the words are that the estate, 'on their decease *be divided* among my heirs at law.' The division was to be prospective, and we see no reason why the class should not also be taken to be so. For these reasons, as well as those given in the previous opinion, we think that these words were intended to fix the time for the vesting of the estate and for the ascertainment of the persons to take in possession." . . . "We therefore decide that the heirs of William DeWolf, Senior, are to be ascertained as of the date of the death of Mrs. Rogers, December 14, 1890, 'according to the statutes of descents,' as it then was."

The clause construed in *Tyler for an Opinion*, 30 R. I. 590 (1910), reads as follows: "Third I give, devise and bequeath unto my granddaughter, Clara M. Robinson, all the rest and residue of my estate of every kind and wheresoever situate or lying to be and remain to her, her heirs and assigns forever; if the said Clara M. Robinson should die without leaving living issue, born of her own body, then in that case I give, devise and bequeath my said estate to my heirs at law." SWEETLAND, J., said (p. 594): "The question arises whether the heirs of Otis Foster are to be ascertained as of the date of the death of the testator, or as of the death of Clara M. Robinson. 'While the general rule is that the heirs of a testator are to be taken from the time of his death, yet the rule gives way to a contrary intent to be found in the will,' *DeWolf* v. *Middleton*, 18 R. I. 810. In this limitation to his heirs, Otis Foster looked forward to the happening

of the contingency upon which the estate would vest in his heirs, and provided that 'then in that case I give, devise, and bequeath my said estate to my heirs at law.' We find that the testator intended by this clause of his will to limit over the estate to those persons who should be his heirs upon the death of Clara M. Robinson without leaving living issue."

The following language of DURFEE, J., in *Rogers* v. *Rogers*, 11 R. I. 38, 73 (1874), is also worthy of consideration: "It has been held that, where the bequest is made in the form of a direction to pay or divide at a future time, the vesting will be postponed till then, for the reason that, inasmuch as the bequest consists in the direction to pay at a future time, it is in effect a bequest *at* that time, not an immediate bequest."

It appears to us that the will of John Winthrop gives clear and conclusive evidence that the testator intended to fix the time after the death of the life-tenant when the said J. Winthrop should have rejected the devise as the time for ascertaining the "heirs," who would then be entitled to distribution.

We are of the opinion that the "heirs" of the testator's two sisters who were in being at the time when J. Winthrop DeWolf rejected the devise after the death of Elizabeth DeWolf are entitled to distribution of the trust fund. This shuts out any claim on the part of the estate of the said Elizabeth DeWolf, who was dead before the time for ascertainment arrived; and there remained of the heirs of Annette H. DeWolf, alive at the time fixed for ascertainment, J. Halsey DeWolf, and the three grandchildren, J. Winthrop, Halsey and Agnes; and of the heirs of Adelaide Augusta Vernon, Harriet W. Waring, Adelaide Walcott, and the three children of John W. Vernon, viz.: Amey Vernon II, Anne T. and Adelaide W. Vernon; that the DeWolf heirs are entitled to one-half of the fund, of which one-half the estate of J. Halsey DeWolf is entitled to one-half, and the three grandchildren, J. Winthrop, Halsey and Agnes are entitled

to one-third of one-half or one-sixth each; that the Vernon heirs are entitled to one-half of the trust fund, of which one-half Harriet W. Waring is entitled to one-third; Adelaide Walcott, one-third, and the three children of John W. Vernon, each to one-third of one-third or one-ninth.

A decree may be presented for our approval in accordance herewith, and the case will be remanded to the Superior Court for entry thereof.

*Claude R. Branch, Edwards & Angell,* for complainant.

*Aylsworth Brown,* for respondent.