## LASCH *v.* CORNS ET AL.

[No. 17,989.   Filed January 16, 1950.]

*Sevald & Sevald,* of Hammond, for appellant.

*Arthur E. Letsinger,* of Crown Point, for appellees.

WILTROUT, J.—Appellant, a carpenter, sustained an accidental injury while working with a power saw, and filed his claim against appellees for compensation. The Industrial Board, in denying compensation, found that appellant was not an employee of the appellee Corns' Conveyor Belt Company, and at the time of the injury was performing services for the appellee Frank V. Corns in the capacity of a casual laborer and not in the usual course of said Frank V. Corns' business.

The finding as to appellant's status is the sole matter presented for review. In reviewing such finding we must consider only the evidence most favorable thereto. *Scott* v. *Rhoads* (1943), 114 Ind. App. 150, 51 N. E. 2d 89.

The appellee Frank V. Corns, together with his wife, as individuals, operated a factory at Griffith, Indiana, under the name of Corns' Conveyor Belt Company. The business was not incorporated. Here they manufactured canvas belts, filter bags and hand pads. Corns was not in the building or woodworking business and the factory did not use wood in any part of its operations.

Corns' wife lived in Chicago. He lived there part of the time, and part of the time in Griffith, where he had living quarters in the factory building. There was a box or refrigerator car near the factory building which was used for the storage of materials for the factory, and Corns permitted appellant to live in this car, both while working for Corns and while working for others, as well as when not working for anyone. No rent was charged.

Sometime in 1948, Corns purchased a residence in Griffith, a block and a half to two blocks from the factory, which residence he proposed to remodel. The residence was not vacated by the former occupant until August or September, 1948. As soon as it was vacated the work of remodeling was started, but before that time certain items of woodwork were prepared.

Corns set up a woodworking room near the factory for the purpose of working on materials for the residence, and placed some woodworking machinery there. Appellant was doing contracting work and owned a number of his own tools, including the electrically operated saw on which he was injured. These tools were placed in this room.

Appellant had previously, in 1946, done some brick work for Corns on the factory building on contract. At no time did he work in the factory making belting, bags or pads.

From time to time, over a period of several months, Corns acquired materials for his house, both new and used, and appellant was called upon to work for him "off and on." He hired appellant to work on floor boards on a piece-work basis. Several weeks later he hired appellant to veneer some windows, also on a piece-work basis. Appellant also from time to time did other work, including work on window frames and doors, at least some of which appears to have been done on an hourly basis. At the time of his injury appellant was preparing to veneer either two or four windows which had been obtained from a church building.

Appellant knew that none of the lumber he was working on was usable or to be used in the factory. He had no regular working hours, but worked when he felt like it, and quit when he wanted to. He kept track of his own time and the number of pieces he made by writing it on a piece of board. Corns at various times advanced money to him, and Saturday evenings, if he had anything coming, he would be paid in full for that week and the board destroyed. No deductions were made for taxes.

The board properly found in the instant case that the accident did not occur in the usual course of appellee Corns' business. *Coffin* v. *Hook* (1942), 112 Ind. App. 549, 45 N. E. 2d 369; *Mason* v. *Wampler* (1929), 89 Ind. App. 483, 166 N. E. 885; *Herthoge* v. *Barnes* (1932), 94 Ind. App. 225, 180 N. E. 489.

There is no hard and fast rule by which it can clearly and unfailingly be determined where to draw the line between employments which are casual and those which are not. Each case must rest, in the final analysis, upon its own facts and circumstances. However, definitions of the word "casual" are of assistance.

*Mason* v. *Wampler, supra,* quotes the case of *In re Gaynor* (1914), 217 Mass. 86, 104 N. E. 339, with reference to the word "casual" as follows:

"Its ordinary signification, as shown by the lexicographers, is something which comes without regularity and is occasional and incidental. Its meaning may be more clearly understood by referring to its antonyms which are regular, systematic, periodic, and certain."

It is stated in *Coffin* v. *Hook, supra,* that:

" 'Casual,' as used in the Workmen's Compensation Act, is used in its usual and ordinary sense and meaning. Webster's New International Dictionary defines 'casual' as 'Happening or coming to pass without design, and without being foreseen or expected. Coming without regularity; occasional; incidental. Liable to happen; subject to chance or accident; uncertain. Having the air of a chance or incidental occurrence.' We think the decisions in which this Court has had occasion to speak of the word 'casual' bear out the statement that the word is used in its ordinary acceptance."

The board was entitled to draw reasonable inferences from the facts in evidence. We cannot say, as a matter of law, from the facts and circumstances shown, as well as the inferences which the board might draw therefrom, that the employment by Corns was other than casual, or that appellant was an em-

ployee of Corns' Conveyor Belt Company. *Mason* v. *Wampler, supra; Crickmore, Admx.,* v. *Pattison* (1931), 92 Ind. App. 309, 175 N. E. 138.

Affirmed.

NOTE.—Reported in 89 N. E. 2d 553.