JOSEPH LE TOURNEAU, Defendant Below, Plaintiff in Error, v. CONSOLIDATED FISHERIES COMPANY, Plaintiff Below, Defendant in Error.

(*January* 31, 1947.)

HARRINGTON, Chancellor, SPEAKMAN, TERRY, CAREY, and PEARSON, J. J., sitting.

*Caleb M. Wright* and *Everett F. Warrington* for Plaintiff in Error.

*James M. Tunnell, Jr.,* (of Tunnell and Tunnell) for Defendant in Error.

Supreme Court, No. 1, May Session, 1946.

SPEAKMAN, J., delivering the opinion of the Court:

Consideration must first be given to the contention of the defendant that the Superior Court's conclusions of fact are final. It refers to Section 18 of the Compensation Act, Code, § 6088, which provides that an award of the Industrial Accident Board, in the absence of fraud, shall be final and conclusive between the parties, unless appeal is taken to the Superior Court, in the manner provided in the law. It is not contended that the appeal to the Superior Court was not regularly taken. The defendant's contention is that "nothing is said in the statute about any appeal from the Superior Court, and we may, therefore, safely conclude that the judgment of the Superior Court is meant to be conclusive." But Article IV, Section 12 of the Constitution of 1897 provides for the issuance of writs of certiorari by this court to the Superior Court. Nor is that right confined to the correction of errors in proceedings that merely stem from the common law. *Elbert v. Scott, 5 Boyce* (28 *Del.*) 1, 90 *A.* 587; *Jeans vs. Jeans, 3 Harr.* 136; *Schwan-*

*der v. Feeney's, 3 Terry* (42 *Del.*) 198, 29 *A.* 2d 369; *Woolley's Del. Prac.* 896.

The Industrial Accident Board heard but two witnesses, the claimant and William Hayes, the treasurer and general manager of the defendant. There was no material conflict in the evidence, except concerning the contract of employment.

It was shown by the evidence that on the date the claimant sustained his injuries, and for some time prior thereto, the defendant was engaged in the business of extracting oil from menhadden fish, which it used in the manufacture of products known as fish oil and fish meal. Sometime prior to the plaintiff's employment, one of the buildings used by the defendant in connection with its business was damaged by a hurricane. Much of the damage was to the metal roof and siding of the building. To repair the roof and siding, the services of a skilled metal worker were necessary. The defendant had in its employ a large crew of maintenance men, but did not have as a member of the crew a skilled metal worker. Theretofore, when it was necessary to have roofing work done, the defendant usually hired outside men, because there was "more or less climbing" and it desired to have experienced men do the work. In the summer of 1944, some experienced men from the American Steel Band Company were brought in. They were paid on an hourly basis, they carried their own insurance, and payment for their services was made to the American Steel Band Company. The claimant, who was a structural iron worker, heard in February, 1944, that the defendant might have a job for him, and he saw William Hayes, the treasurer and general manager of the defendant, about it. He told Mr. Hayes the amount of wages he was then receiving on the job at which he was working, and was told to return in a couple of weeks. In the meantime he finished the job at which he was work-

ing and took another job, under the impression that Mr. Hayes did not intend to go ahead with the repair work. Under date of November 15, 1944, the defendant wrote the claimant as follows: "You called sometime ago we believe with reference to a position as a steel worker. If you are still available and desire a position we will be pleased to have you get in touch with us."

Upon response to this letter the claimant was employed by the defendant. He went to work the day before Thanksgiving, 1944, was put on the payroll, and worked a little over two weeks before he sustained his injuries. For this period of employment he was paid $66.38 less a $4.40 deduction for State and Federal income taxes. The job required special tools, and, as was customary, the claimant used his own tools.

The claimant testified concerning the terms of the contract of employment, as follows: "I was employed to put up work—repairing the sheet metal on the building which is a part of a structural iron worker's trade.* * * He [Mr. Hayes] put me on an hourly rate and if I gave him satisfactory work it would be an unlimited amount of time on account of the condition of the various buildings." In answer to the question "Didn't you say you felt the job would take about five months?" he replied "What is absolutely tore off there now, but there is an indefinite amount of work to be done there. * * * The first thing I was assigned to one side of the building—I replaced the siding on one place of the side of the building." He was asked "Was that part of the damage that was caused by the hurricane?" to which he replied "That is right." He further testified "My understanding with Mr. Hayes was that I was employed to do all the necessary work that had to be done."

William Hayes, the treasurer and general manager of the employer, testified concerning the terms of the contract

that "Mr. LeTourneau was hired to put this roofing on the building that blew off in the hurricane, he came there for a position as he said, I guess he came there twice as I recall, and we weren't quite ready because we didn't have the material and when we were ready I wrote him and he came and I employed him to put this roofing on that had been torn or pulled off. I hired him by the hourly rate just as he says, to do that particular work." In answer to the question "What was the first job you assigned to him?" he replied "I don't recall any more than I went down and pointed out these broad places where we wanted to sort of cover in to keep the weather out and he went ahead and done it as he thought best and done it right." Mr. Hayes further testified that "the work we had after the hurricane had blown this material off I think would have required two or three months, that is, working steadily. What would have developed after that time, if anything, I don't know but that was about what there was in sight to the best of my knowledge." In answer to the question "Did you contemplate hiring Mr. LeTourneau indefinitely?" he replied "No—there was nothing—we didn't go into that at all I guess. I explained to him that the storm did considerable damage and I wanted to get the place sealed in. There was no stated time he was going to get through—there was nothing like that—he didn't ask about it and we didn't either." He was asked the following questions and gave the following replies: "Could you have discharged him at any minute?" "I feel I could, yes—that is true." "You could have laid him off tonight, couldn't you?" "There was no contract in the sense of having a stipulated time." "The man was employed as an employee of the company?" "Yes." "It wasn't a contract other than a normal contract of hire for an employee, Mr. Hayes?" "I would say I hired him by the hour to do this work and I think the days he didn't work it was days it was unfit to work, I believe that."

It is conceded by the defendant that the claimant is entitled to the compensation as awarded, unless it has been established by the evidence that, at the time of his injuries, the claimant was excluded from the benefits of the law because of the provision that injuries are not compensable when the employee is a person "whose employment is casual and not in the regular course of the trade, business, profession or occupation of his employer." The compensation laws of many states contain a provision in simi·ar language. Other states have substantially the same provision in their laws as in ours, except that the two elements in the provision are separated by the disjunctive "or" rather than connected by the conjunctive "and." Because of the conjunctive word used in the provision in our law both conditions must concur, neither of itself being sufficient to constitute an exception. Consideration will now be given to the first condition.

It has been truly stated that in order to ascertain if an employment is casual the courts have adopted various tests. In *Schneider on Workmen's Compensation, Per Ed.,* § 279 (d) it is said:

"The weight of authority is to the effect that the true test in each case is whether the service rendered or work done is of a casual nature, the infrequency of the employment or its duration being immaterial. The important consideration is the nature of the employment.

"Another test which is used in other states makes the contract of service the determining factor as to whether the employment is casual, rather than the nature of the particular work being done."

Those states which apply the first test, follow what is known as the English rule; those applying the other test have adopted what is known as the Massachusetts rule.

The English Compensation Act, which had been closely

followed in many of our states, excludes from compensation an employee "whose employment is of a casual nature, and who is employed otherwise than for the purpose of the employer's trade or business." In the case of *Hill v. Begg*, [1908] 2 *K. B.* 802, the court had occasion to construe the meaning of the words "casual nature" as used in the Act. It held that the words meant the character of the man's employment, not what is the tenure of the employment.

Connecticut is one of the few states which had a law containing language identical with that in the provision in the English Act. It was the Act of 1913, Pub. Acts 1913, c. 138, pt. B, § 43, as amended in 1915, Pub. Acts 1915, c. 288, § 22. That law was before the Supreme Court of Errors in *Thompson v. Twiss*, 90 *Conn.* 444, 449, 97 *A.* 328, *L. R. A.* 1916E, 506. The Court found that the Minnesota, Rhode Island, California and Connecticut Acts followed the British Act, and that under those patterned after the British Act the determinative point is the nature of the service rendered, citing *Hill v. Begg, supra.*

Under the Massachusetts law of 1911, St. 1911. c. 751, pt. 5, § 2, those employees were excepted from its benefits "whose employment is but casual or is not in the usual course of the trade * * * of his employer." In *Re Gaynor*, 217 *Mass.* 86, 104 *N. E.* 339, 340, *L. R. A.* 1916A, 363, the court contrasted the provision in its Act with the one in the English act, and was of the opinion that the difference in phraseology could not be treated as unintentional, but must be regarded as deliberately designed, and in speaking of the first condition in the provision in its law said: "It is possible that a distinction as to the character of the employment may be founded upon the difference between the modifying word 'casual' used in our act, and the words 'of a casual nature' in the English act. * * * The phrase of our act tends to indicate that the contract for ser-

vice is the thing to be analyzed, in order to determine whether it be casual, while in the English act the nature of the service rendered is the decisive test."

The court noted that the English Act was followed in many respects by the Massachusetts Act, and hence "even slight differences of phraseology may be assumed to have signification."

We think what was said in the Gaynor case, touching the first condition in the provision in the Massachusetts Act, is applicable to the first condition in the provisions in our law. We are not unmindful of the fact that the two conditions in the Massachusetts Act are separated by the disjunctive "or" while in our Act they are connected by the conjunctive "and," but we do not consider this lessens the value of the Massachusetts case as an authority to be followed in construing the condition in question in our Act. The conclusion of the Massachusetts Court as to the meaning of the phrase "whose employment is but casual" will be adopted by us in construing the phrase "whose employment is casual" in our law.

The only material conflict in the evidence involved the contract for service. The claimant testified that "he [Mr. Hayes] put me on an hourly rate and if I gave him satisfactory work it would be an unlimited amount of time on account of the condition of the various buildings," while Mr. Hayes, on behalf of the defendant, testified that the claimant "was hired to put the roofing on the building that blew off in the hurricane" and that this "would have required two or three months, that is, working steadily." Because of the conflict in the evidence, it was the duty of the Board to ascertain and state the true terms of the contract of employment. By the law, Code, § 6085, it is provided that in those cases in which a claim for compensation is involved, "the Board shall * * * hear and determine the

matter in accordance with the facts and the law, and state its conclusion of fact and rulings of law." Because of the conflict in the evidence, it was the duty of the Board to determine whose testimony it deemed most worthy of credit, and to state its conclusions of fact accordingly. Notwithstanding the mandate in the law, the Board failed to state any conclusions of fact in which the specific terms of the contract of employment was included; instead, it simply drew its conclusion from the evidence as a whole, that the claimant was "hired * * * as a regular employee * * * and was not employed for or engaged in casual employment." However, what we consider to be an insufficient statement, by the Board, of its conclusions of fact, we believe is amply overcome by the Board's ultimate finding that "By preponderance of evidence The Industrial Accident Board of the State of Delaware is unanimously of the opinion that Joseph LeTourneau, Claimant, was a regular employee of the Consolidated Fisheries Company and was employed as such at the time of hire, and in his regular course of employment at the time of the accident."

By this general finding, it is evident that the Board recognized that there was, what it deemed to be, a material conflict in the testimony, and that it accepted as true the testimony most favorable to the claimant, and made its award accordingly. This action of the Board was essentially an award based upon a finding that, as a fact, the contract of hire was as testified to by the claimant.

██ In those cases, such as the instant one, in which the civil law procedure is followed, this Court ordinarily, upon appeal, will not disturb a finding on the facts by a lower court, in this instance The Industrial Accident Board, if it appears from the record that there was evidence to support the finding. The reason for the rule generally observed by reviewing courts, is that the trial court sees and hears the

witnesses, and is, therefore, the better able to determine the credit and weight to be given their testimony. This rule was recognized in *New York Trust Co. v. Riley*, 24 *Del. Ch.* 354, 16 *A.* 2d 772, as applicable to appeals from the Chancellor. In the instant case, it appears to us, that there was ample evidence to support what we deem to be a finding as a fact by the Board, that the contract of hire was as testified to by the claimant, and that finding will not be disturbed by us. Upon that finding can it be said that the employment of the claimant was casual within the meaning of our law? In *Gooden v. Mitchell*, 2 *Terry* (41 *Del.*) 301, 21 *A.* 2d 197, 202, our Superior Court had occasion to consider the meaning of the words "casual employment" as used in our compensation law. It said that "employees are engaged in casual employment when they are employed only occasionally, irregularly or incidentally, as distinguished from those employed regularly and continuously."

In *Re Gaynor, supra*, it was said: "The word 'casual' is in common use. Its ordinary signification, as shown by the lexicographers, is something which comes without regularity and is occasional and incidental. Its meaning may be more closely understood by referring to its antonyms which are 'regular,' 'systematic,' 'periodic,' and 'certain.' "

On the other hand, it has been said that "it would be difficult, if not impossible, to formulate a hard and fast inclusive and exclusive definition of 'employment but casual,' ". This was said by the Court in Mitchell's case, 121 Me. 455, 118 A. 287, 289, 33 A. L. R. 1447, in construing the Maine law, Pub. Laws 1919, c. 238, § 1, par. 2, and the same might be truly said of the phrase "whose employment is casual," as used in our Act.

In the present case, it is to be noted, the defendant was engaged in the manufacture of fish oil and fish meal. In the regular course of that business, it had in its employ a

large crew of maintenance men, but did not have as a member of the crew, or otherwise, a skilled metal worker, and the services of such a worker were required at the time of the hiring of the claimant. Just when the building upon which the claimant was working at the time of his injuries was damaged by the hurricane does not appear in the record, but it is quite evidént that it occurred some weeks before the hiring of the claimant. The work on the building could, in no sense, be classed as emergency work. It was not undertaken immediately following the hurricane. It was delayed for a long time prior to the claimant's employment. Mr. Hayes testified that "he [the claimant] came there for a position, I guess he came twice, as I recall." The testimony of the claimant was that he heard in February 1944, that the defendant might have a job for him and he saw Mr. Hayes about it and was told to return in a couple of weeks. He did not return, as instructed, but on November 15, 1944, he received the letter which indicated that the defendant might have a "position" for him; as requested by the letter he got in touch with the defendant, was employed, was put on the payroll and started work the day before Thanksgiving. His work was done under the direction of Mr. Hayes, the general manager of the defendant, and it is admitted by the defendant that the work which he did was properly done.

From the record in the case we feel fully justified in accepting as true the testimony of the claimant that "He [Mr. Hayes] put me on an hourly rate, and if I gave him satisfactory work, it would be an unlimited amount of time on account of the condition of the various buildings." We think this shows more than an incidental employment. We think it shows that claimant was given employment which was to be regular and continuous, and not employment which could be reasonably described as casual. The fact that prior to the claimant's employment, the defendant used outside labor or independent contractors to do roofing work

can have no bearing on the claimant's status as an employee. It may be argued that both before, and at the time of the claimant's employment, roofing work on the buildings of the defendant was not in the regular course of the business of the defendant, but having reached the conclusion that the defendant's employment, at the time of his injuries was not casual, renders it unnecessary for us to consider whether the claimant was engaged at the time of injury in working in the regular course of the business of the defendant.

The judgment of the court below will be reversed and the record will be remanded, with instructions to enter a judgment affirming the finding of The Industrial Accident Board.