COLLINS & RYAN, Employer-Appellant, v. JOHN H. HUDSON, Claimant-Appellee.

(*July* 27, 1950.)

CAREY, J., sitting.

*Everett F. Warrington* for Employer-Appellant.

No appearance for Claimant-Appellee.

440

Superior Court for Sussex County, No. 330, Civil Action, 1949.

CAREY, J.:

Two questions are presented: (1) is the evidence sufficient to justify the Board's finding that claimant's hernia arose out of his employment; (2) is the award for surgical, medical and hospital bills justified by the evidence? Discussion of these questions requires an examination of the testimony and other parts of the record.

The claimant's usual work was that of a salesman of gas and electrical appliances. Apparently, he was not ordinarily called upon to lift heavy objects. On January 3, 1949, the day of the alleged accident, he was helping to take inventory. It became necessary to stack a crated gas range weighing about 300 pounds on

top of another one. Claimant and another man did so, each lifting one end of the range.

The foregoing testimony was given by claimant and verified by his foreman and was not disputed. Claimant further testified that, when he and his co-worker had raised the range about shoulder high, he suddenly felt a sharp pain in his side; that he immediately called out to his foreman who was standing a few feet away; that he stopped work but stayed around the warehouse for about half an hour, then went home; that he came back to work the next morning and resumed taking inventory but did no more lifting; that, after the inventory was finished a few days later, he went back to his usual work as a salesman; that, about a week after the accident, he noticed for the first time a lump as large as a grape or walnut at the place where he had felt the sharp pain on January 3d; that over a period of weeks this lump grew larger, although it gave him no pain, until it became the size of an egg; that he finally went to a doctor at a hospital on May 23d who informed him that he had a hernia and needed an operation; that he returned to the hospital the next day for the operation. He denied having had a hernia or any other trouble with his side prior to January 3d.

The only witness called by claimant was his foreman who verified claimant's testimony as to what happened at the warehouse on January 3d.

On behalf of the employer, the hospital records were produced. They showed a diagnosis of, and an operation for, a right direct inguinal hernia. They also contain the statement that the claimant had had the rupture for about two years. This statement, however, does not purport to be a medical conclusion but is apparently a part of the patient's history as given by him upon admission to the hospital. The interne who took this history testified that he entered it upon the hospital records just as the claim-

ant gave it to him and that he believed "that is the way the patient told me". On his own behalf, the claimant flatly denied saying this to the interne. He also stated that he could not remember saying it to anyone else, and that he would have had no reason to say it because it was untrue.

■ The basic question for the Board's determination was whether the hernia was directly caused by the episode of January 3 or whether it was a pre-existing condition. The appellant does not deny that issues of fact, and inferences to be drawn therefrom, are matters for the decision of the Board, and that this Court will not reverse that decision if the record contains competent evidence to support it. *Le Tourneau* v. *Consolidated Fisheries Co.,* 4 *Terry* 540, 51 *A.* 2d 862. The contention is that the evidence here presented is incompetent, in the sense of being inadequate, to support the finding of causal connection between the lifting and the hernia. Pointing out the fact that a hernia may be and often is the result of natural causes, the appellant argues that a heavier burden than usual rests upon a claimant in hernia cases to prove this causal connection, and that this burden can be sustained only by the introduction of medical testimony showing such a connection.

■ Although it is undoubtedly the law of this State that the burden of proving causal connection by the preponderance of the evidence is upon the claimant, I cannot agree with the proposition that medical testimony is necessarily required for that purpose. In this respect our statute is unlike those of Pennsylvania, New Jersey and several other states which lay down specific and detailed requirements of proof in hernia cases. *Cf Zelenko* v. *Carnegie Coal Co.,* 132 *Pa. Super.* 135, 200 *A.* 608; *Covitz* v. *Carroll Bakery,* 45 *A.* 2d 127, 24 *N. J. Misc.* 145; *Arduini* v. *General Ice Cream Co.,* 123 *Conn.* 43, 192 *A.* 314, 114 *A. L. R.* 1333.

Decisions under such acts are therefore of little help. The

Delaware law does not even mention hernia. If caused by over-exertion arising out of and during the course of employment, it is concededly compensable just as any other accidental, violent damage to the body. In the absence of statutory mandate necessitating some special type or quality of proof, it must be assumed that the Legislature intended to require none, but was satisfied to allow the Board to be governed by the same basic rules as in any other kind of injury. The imposition of an additional qualification by this Court would amount to an amendment of the Act. *Buncle* v. *Sioux City Stockyards Co.,* 192 *N. W.* 555, 185 *N. W.* 139. Whether the possibility of fraudulent claims warrants a difference in the degree of proof required in hernia cases is a matter for legislative consideration.

The many cases collected in 20 A. L. R. 48 and 73 A. L. R. 520 announce no principle in conflict with the foregoing. They do illustrate the point that each case must be decided upon its own facts and circumstances, and the further point that an award may not be based upon surmise or conjecture. The New York case of *Alpert* v. *J. C. & W. E. Powers,* 223 *N. Y.* 97, 119 *N. E.* 229, cited by appellant, is distinguishable on the facts. In it there was no finding by the Commission that the hernia was caused by lifting or straining, or was in any way due to the work performed. The actual events proven would indicate that it was probably due to natural causes. Consequently, said the Court, "the subsequent finding that the injuries were accidental and arose out of and in the course of his employment are conclusions without facts or evidence to support them."

In the present instance, the Board saw and heard the witnesses. It believed the claimant's story to the effect that he had never had a hernia prior to January 3d and that he was lifting one end of a 300-pound stove and had raised it shoulder high when he felt sharp pain at the very spot where the hernia was later

found to exist. The inference that it was caused by the lifting or strain was permissible under the evidence presented. That part of the award allowing payments of compensation for the period of disability must be sustained.

The second part of the award, which covers surgical, medical and hospital expenses, was based by the Board upon Section 8 (b) of the Act, being section 6078, Revised Code 1935, as amended. It reads as follows: "(b) During the first thirty (30) days of the injury the employer shall furnish reasonable surgical, medical, and hospital services, medicine, and supplies, as and when needed, unless the employee refuses to allow them to be furnished by the employer. The costs of such services, medicines, and supplies shall not exceed the regular costs for such services, medicines and supplies, and in case of controversy the costs shall be subject to the approval of the Industrial Accident Board. If the employer shall, upon application made to him, refuse to furnish reasonable surgical, medical, and hospital services, medicines, and supplies, the employee may procure the same and shall receive from the employer the reasonable cost thereof within the above limitations." 46 Del. Laws.

Subdivision (c) permits the Board, upon application, to require the furnishing of additional medical attention for a further period of time. Subdivision (f) gives the employee the privilege of applying to the Board in writing for permission to employ a physician or surgeon of his own selection. If the Board approves his application, he is entitled to receive from the employer the reasonable cost of the service of the physician or surgeon so selected by him.

These provisions are obviously for the protection of both employee and employer. They protect the employee by prescribing how much medical aid he may receive, by allowing additional aid when proper, and by providing a method of assuring the

furnishing of proper aid by the employer. They protect the employer against unreasonable charges and against possible malingering and fraudulent claims. This latter protection is perhaps more important to an employer in many instances than the former, especially in view of the fact that compensation is allowed not only for violence to the physical structure of the body, but also for such diseases and infections as naturally result directly therefrom, as well as for certain occupational diseases. By having his own physician attend the injured employee, the employer is better able to make certain that the injury or illness is the result of the employment and that the employee gets back to work as promptly as possible. Certainly, the protection thus afforded the employer would be meaningless, if an employee, having both time and ability to request the furnishing of medical attention by the employer, is permitted to go to a physician of his own choice, say nothing to the employer about the need for treatment until after a cure has been effected, and then recover the costs of that treatment. If these provisions of the act mean anything, they must intend that the employer have at least some opportunity of offering or refusing to furnish treatment, in the absence of exceptional circumstances. 58 Am. Jur. 802.

The annotations in 7 A. L. R. 545 and 142 A. L. R. 1206 contain many cases illustrating the application of this basic rule, and give examples of factual situations held to justify departure from it, under statutes very much like ours. Those exceptions have usually been cases where the employer has unduly delayed furnishing service after notice; where the employer, after notice has acquiesced in or failed to object to the employee's selection of a doctor; where the treatment offered or furnished by the employer was inadequate; where such an emergency existed as made it impossible or impracticable for the employee to give prior notice to the employer before seeing a doctor. There may be other exceptions. Sometimes the decision has turned upon the precise statutory

language. I disclaim any intention of deciding which, if any, of these exceptions would be recognized by this Court; I mention them simply to demonstrate the point that some circumstance must appear in the record to justify an award for medical bills which have been incurred by an employee without giving the employer a chance to furnish treatment.

In the present case, the Board made no finding of fact pertaining to medical services other than the bare statement included in conclusion No. 4 set forth above. Under the heading of "Rulings of Law," it merely quotes Section 8 (b) of the Act. The record when carefully examined fails to disclose any basis whatever to support this part of the award.

The claimant went home from work on January 3d after complaining of pain from the strain. He returned to work the following day and carried on his usual activities until he went to the hospital in May. He did not notice the swelling in his side until a week after the accident. There is nothing in the record to show that he even mentioned his condition to his employer until after his discharge from the hospital. True, the employer, through his foreman, knew of the accident but that knowledge did not carry with it knowledge of a later discovered hernia or of the necessity for an operation six months later. Certainly when the claimant returned to work on January 4, went on with his usual duties and made no further complaint, the employer had no reason to offer medical attention. Even when the appellee eventually went to see a doctor and was advised to have an operation, no emergency existed which made it impossible or even impracticable to notify the employer. Yet, the appellee's own statement in the record, signed by himself, admits that he did not request the employer to furnish medical or hospital service. No reason for this is given. Moreover, so far as the record shows, he made no claim for compensation of any kind until June 17, six days

after finally returning to work and eight days after his discharge from the hospital.

 Whatever may have actually occurred, this Court is bound by the record before it. The present record presents simply a case where the injured employee, nearly six months after his accident, went to a physician and hospital of his own choice, without giving the employer any notice or opportunity to furnish medical attention, and without any justifiable excuse for his failure to do so. Under such conditions, an award for that medical attention is not justified. *Kardos* v. *American Smelting & Refining Co.,* 132 *N. J. L.* 579, 39 *A.* 2d 509; *Yurow* v. *Jersey Hat Corp.,* 131 *N. J. L.* 265, 36 *A.* 2d 296, *affirmed* 132 *N. J. L.* 180, 39 *A.* 2d 371. The burden was upon the claimant to show a request for service and a refusal of that request, or to show some circumstances justifying its omission; he presented no evidence whatever on the point, not even to the extent of proving the amount of the bills. At the hearing the employer was therefore under no obligation to produce any testimony since the claimant had failed to carry his burden.

An order will be signed remanding the record, affirming that part of the award which deals with payments for the period of disability, but directing the Board to eliminate that part of the award which deals with payment of bills for medical treatment. Costs will be taxed against the appellant.