WILLIAM WALSH, Claimant-Appellant, v. DIAMOND STATE BREWERY, INC., Employer-Appellee.

(*June* 27, 1951.)

TERRY, J., sitting.

*Stewart Lynch* for claimant-appellant.

*William Poole* (of Berl, Potter and Anderson) for employer-appellee.

Superior Court for New Castle County, No. 295, Civil Action, 1948.

TERRY, J.:

This is an appeal by William Walsh, employee, called Walsh from an order entered by the Industrial Accident Board denying to him compensation for alleged injuries claimed to have been sustained by him in the regular course of his employment with Diamond State Brewery, Inc. (called Diamond) on October 26, 1943.

The general duties of Walsh were those of a night engineer-watchman. His specific duties were to check and fire the boilers of Diamond when necessary, to check the refrigeration machinery and all machinery in the brew house, and to keep the same operating in an efficient manner. The employment covered that period of time when by reason of war certain black-out regulations had been adopted and ordered carried out by Home Defense Authorities; thus, included within Walsh's obligations of employment at the time of his alleged injury was the duty to turn off the lights at Diamond whenever a signal for a black-out, as indicated, occurred.

The employment in this case covered a period of years preceding the alleged injury. On June 23, 1943 Walsh sustained an injury due to strain in helping lift a meter weighing approximately four hundred pounds up and onto a truck. By reason of this injury he was unable to resume his work at Diamond until August 23, 1943, at which time he returned to his regular duties aforesaid. During the period of disability, that is from June 23 to August 23, Diamond paid Walsh compensation under the provisions of our *Compensation Act*.

On the evening of October 26, 1943, while engaged in his regular employment, Walsh suffered a cerebral hemorrhage from which he has not recovered to the extent of being able to continue his employment with Diamond.

Walsh contended before the Board below, and now contends, that the cerebral hemorrhage and resulting injuries occa-

sioned thereby was due to overexertion in carrying out his duties of employment on the night of October 26, 1943, for which he is entitled to compensation.

Diamond on the other hand contended before the Board below, and now contends, that the cerebral hemorrhage suffered by Walsh was due entirely to natural causes, for which he is not entitled to compensation.

The Board, therefore, had before them a well defined issue of fact to determine; that is, whether the cerebral hemorrhage suffered by Walsh on the evening of October 26, 1943 was the result of natural causes or the result of overexertion in carrying out his regular duties of employment.

The Supreme Court of this State in the case of *Philadelphia Dairy Products Co. v. Farran*, 5 *Terry* 437, 61 *A.* 2d 400, in affirming the Industrial Accident Board and the Superior Court on appeal, stated that an employee while not engaged in his usual work but acting in an emergency which involved the performance of an unusual task and an expenditure of unusual effort resulting in a heart attack caused by unusual strain sustained a compensable injury by reason of an accident under the provisions of the *Workmen's Compensation Law* of this State. Chapter 175, *Revised Code of Delaware*, 1935. For obvious reasons the Court did not determine whether such an injury occurring during the performance of the normal and usual duties of employment would be compensable under the *Delaware Act*.

Subsequent to the *Farran case* Judge Layton, sitting in the Superior Court, had before him on appeal from the Industrial Accident Board the case of *Gray's Hatchery & Poultry Farms, Inc.*, employer, *v. Stevens*, employee, 7 *Terry* 191, 81 *A.* 2d 322, 324, involving the question left unanswered in the *Farran case*; that is, whether or not an employee suffering an injury while engaged in the performance of his normal and usual work is entitled to compensation. In that case the Board below, upon finding that Stevens was in good health while engaged in his

normal and usual employment but suffered a ruptured disc as a direct consequence of lifting a fifty pound egg crate, awarded to him compensation in accordance with the provisions set forth in the *Act, id.* The Court determined from the record that the causal connection between the lifting and the injury had been sufficiently demonstrated to support the Board's finding, and, based upon that finding, affirmed the Board by concluding that Stevens under the circumstances had suffered a compensable injury by accident. The Court stated, however, "most compelling reasons exist [in cases of this nature] for requiring that the evidence clearly establish that the injury happened at a fixed time and place and was attributable to a clearly traceable incident of the employment. Otherwise, the causal connection between the application of force and the resulting internal injury would be rendered vague and the element of unexpectedness, without which the definition of an accident is incomplete, would be lacking."

An accident under the provisions of the *Delaware Act* has been defined as "an occurrence which proceeds from an unknown cause, or which is an unusual effect of a known cause, and hence unexpected and unforeseen." *Philadelphia Dairy Products Co. v. Farran, supra* [5 *Terry* 437, 61 *A.* 2d 402.]

The present case involves the same legal problem as passed upon in the *Gray's Hatchery* case, with the sole exception of the *quantum* of proof required in order to determine if in point of fact Walsh sustained a compensable injury by accident on October 26th. In other words, when one going about his work in a normal and usual manner is overcome by a lesion which may be the natural result of a pre-existing condition it should not be said to have been unexpected or unforeseen, in the absence of proof it was caused by some accidental preceding means. *Buck v. Arndt,* 153 *Pa. Super.* 632, 34 *A.* 2d 823. In the present case Walsh would be entitled to an award of compensation only in the event that his proof clearly establishes that his alleged injury occurred at a fixed time and place and was attributable to

a clearly traceable incident of employment, which was the sole cause of his injury, or a contributing cause thereto.

Now the question is: Did Walsh on the 26th of October sustain a compensable injury by accident in the performance of his normal and usual duties of employment with Diamond?

The factual circumstances surrounding the happening of the event resulting in the alleged injuries to Walsh on October 26th are in sharp conflict. Necessity does not demand a detailed recitation of all the testimony. Walsh contends in substance that prior to his injury in June, 1943, he suffered from hypertension and arteriosclerosis, which caused him to have from time to time attacks of vertigo; that as a result of the injuries sustained by him in June he suffered a small subretinal hemorrhage causing partial blindness in one eye; that in August, 1943, he was ordered to return to his regular employment at Diamond; that he did return to work and continued to have attacks of vertigo as indicated up to the night of Ocotber 26th, the time when the alleged accident resulting in his injury was supposed to have occurred. Walsh contends that at about 9:30 in the evening of October 26th a black-out signal was sounded; that in obedience thereto he turned out the lights in the boiler room and on the platform adjacent thereto, then ran up five flights of steps to turn out the lights in the brew rooms, then returned to the boiler room, turned on the furnace drafts, shovelled coal on the furnace fire, and was in the act of closing the furnace door when he suffered a cerebral hemorrhage causing him to fall against the boiler and the wall adjoining the same. Walsh contends that by reason of the black-out and his hurry to climb the five flights of steps and return to the boiler room as indicated, together with the shovelling of coal on the furnace fire, he overtaxed himself in the light of his then physical condition to the extent that such over-exertion was the direct or a contributing cause to the cerebral hemorrhage that he then suffered resulting in his inability to continue to perform his duties at Diamond, for which he says he is entitled to compensation.

Diamond produced Belle Middlebrook, a witness, who testified in substance that she arrived at the boiler room at approximately 9:30 on the evening in question to keep a date that she had previously made with Walsh; that she was present at the time the black-out signal sounded; that Walsh did not leave the boiler room but that he did turn out the lights therein and later shovelled some coal on the furnace fire, then collapsed, but that he did not overtax himself in so doing to any extent whatsoever.

Other witnesses were produced by the respective parties including medical experts.

Upon the conclusion of all the testimony the Board below found as follows: "That on October 26th, A. D. 1943 while shovelling coal in the boiler room of the Diamond State Brewery, Inc., William Walsh suffered a cerebral hemorrhage; that shovelling of coal was part of his regular duties; that much of the testimony of Mrs. Belle Middlebrook, who testified at the rehearing of this case on September 18th, A. D. 1947 is corroborated by that of Mr. Martin A. Mulrooney and Mr. Charles Keech who testified at the continued rehearing held on October 9th, A. D. 1947; that the locations of the light switches, other than those on the upper floors, were all close to the boiler room; that there was no substantiated proof that William Walsh at the time of the black-out had made any trip or trips to the upper floors of the brewery or along the street nor that there were any lights on on the upper floors of the brewery; that the actions of William Walsh on October 26th, A. D. 1943 were not of such a nature as to cause unusual overexertion on his part arising out of and in the course of his employment; that there was no causal connection between the duties performed on October 26th, A. D. 1943 in the course of his employment with the Diamond State Brewery, Inc., and the cerebral hemorrhage suffered by William Walsh; that the attack suffered by William Walsh was not the unexpected, sudden and unforeseeable consequence of a known cause; that William Walsh for several years prior to October 26th, A. D. 1943 had suffered from arteriosclerosis and hyper-

tension; that the cerebral hemorrhage suffered by William Walsh occurred in the course of his employment but did not arise out of it being due to the progressive nature of his pre-existing diseased condition."

Based upon the foregoing findings the Board below entered an order dismissing Walsh's petition. In seeking a reversal of the Board's action Walsh makes the following contentions:

(a) The ultimate conclusion of the Board, that the injuries sustained by Walsh on October 26th resulted directly and entirely from the progressive nature of his pre-existing diseased condition and not as an incident of employment, is against the weight of the evidence.

(b) Even though the Board found that Walsh did not climb the five flights of steps as contended by him to turn out the lights in the brew rooms, they did not specifically find that the shovelling of the coal onto the furnace fire by Walsh did not cause sufficient overexertion on his part to be the sole cause of his alleged injury, or a contributing cause thereto.

Predicated upon the foregoing contentions Walsh now says that the Board's decision should be reversed, the cause remanded to the Board, together with a direction to the Board to enter an award of compensation to him consistent with the provisions of the *Act,* or the cause should be remanded to the Board with a direction to the Board to specifically find as a fact whether or not Walsh's action in shovelling the coal onto the furnace fire overtaxed him to the extent that such was the direct cause of the cerebral hemorrhage suffered by him, or a contributing cause thereto.

Conceding *arguendo* that the Board did not specifically state in their findings that Walsh did not suffer his alleged injury by reason of shovelling coal onto the furnace fire, nevertheless, this question was before them for determination, and it must be said that they considered the same in the light of all the evidence

and all of the contentions of the respective parties.

The ultimate conclusion of the Board furnishing the basis for their dismissal of the petition of Walsh was predicated upon the finding by them that the cerebral hemorrhage suffered by Walsh occurred in the course of his employment but did not arise out of the same, it being due entirely to the progressive nature of his pre-existing diseased condition.

 A careful study of the record reveals evidence to support the ultimate finding of the Board. Such a finding should not be disturbed upon appeal. *Le Tourneau v. Consolidated Fisheries Co.*, 4 *Terry* 540, 51 *A.* 2d 862.

For the reasons indicated, the decision of the Industrial Accident Board is sustained.