BELBER TRUNK & BAG COMPANY, Defendant Below, Appellant, v. MARY MENESY, Plaintiff Below, Appellee.

(*April* 30, 1953.)

SOUTHERLAND, C. J., and WOLCOTT and TUNNELL, J. J., sitting.

*William H. Bennethum* (of Morford, Bennethum and Marvel) for appellant.

*Arley B. Magee, Jr.,* for appellee.

Supreme Court of the State of Delaware.

WOLCOTT, J.:

██ This is an appeal from a judgment of the Superior Court affirming an award of compensation by the Industrial Accident Board. The Superior Court affirmed on the ground that there was evidence in the record to sustain the Board's award and that, under such circumstances, it is powerless to disturb the findings by the Board. On appeal in industrial accident causes, this court is bound by the same limitation. *Le Tourneau v. Consolidated Fisheries Co.,* 4 *Terry* 540, 51 *A.* 2d 862; *Philadelphia Dairy Products Co. v. Farran,* 5 *Terry* 437, 61 *A.* 2d 400.

Initially, it should be stated that the appellee claims solely upon the theory that she suffered an injury by accident. Her claim is not presented as one for compensation for an occupational disease contracted during employment. We express no opinion, therefore, on the question of whether the appellee is suffering from a compensable occupational disease. This opinion should be understood by the reader as having reference only to the right of compensation for injuries by accident.

The appellee was employed by the appellant some time in October, 1949. In September, 1950, she took a leave of absence due to an unrelated physical condition, returning to work on January 15, 1951. On January 26, 1951, she was forced to quit work because of continuous pain in her shoulder and arm.

On January 26, 1951, the appellee's job was washing, sponging and polishing suitcases. Her job required her to lift and handle fairly heavy leather suitcases. The suitcases were stacked near her work table sometimes seven high so that she often was

forced to stand on a stool to lift down the top one. The performance of the washing and polishing operation required her to use her elbow and shoulder a great deal and energetically. About 9:30 or 10:00 A.M. she first felt the pain in her shoulder for which she now claims compensation. Her testimony was to the effect that the pain came on gradually and got progressively worse during the day. It has prevented her from working since January 26, 1951 up to the institution of this cause, and she has suffered some permanent diminution of earning capacity.

A doctor, called by the appellee, testified before the Board that he had treated the appellee for the pain in her arm and shoulder. He diagnosed her condition as a bursitis or an inflamation of the tendon of the bicipital muscle, which is used in the flexing of the forearm. He also testified that he referred her case to an orthopedic surgeon in Wilmington who diagnosed the appellee's condition as "a rather typical supraspinatus syndrome, apparently with no classification and relatively little loss of shoulder motion." Apparently, the diagnoses of the two doctors were substantially the same. The appellee's doctor testified that her employment was directly responsible for her condition, and that the question of whether or not there was an accident on January 26, 1951 was immaterial because the appellee's condition was something that grows on people past middle age[1], and which can be aggravated by straining and lifting of the arm. He also testified that there must have been a precipitating factor on January 26, 1951.

At the request of the appellant, the appellee was examined by a doctor of its choice, who also testified before the Board. This doctor reached substantially the same diagnosis of the appellee's condition, but stated as his opinion that while her employment undoubtedly aggravated her condition, it did not cause it on January 26, 1951, even though the first symptom of

---

[1]The age of the appellee does not appear from the record. Inferentially, however, from all the medical testimony, it must be concluded that she was middle aged at least.

pain occurred on that day. He stated that in his opinion the appellee's condition developed over a period of time preceding January 26, 1951, and that the condition the appellee was suffering from is prone to develop in people of middle age who have degenerative changes in the bones, muscles and tendons. He further stated that it is more likely to develop in such persons who use their arms excessively, and that, ordinarily, the usual cause of the condition is not a direct injury, although it could be caused by a direct injury such as a blow.

We think the opinions of the doctors are in agreement. From their testimony, it must be concluded that the appellee's condition had been growing over a period of time prior to January 26, 1951, and that, undoubtedly, her employment aggravated her condition. The appellant, in fact, concedes that the appellee's present condition is the result of her employment.

It is significant, we think, that there is no testimony in the record whatsoever of any specific motion or activity of the appellee which was immediately followed by pain. We think the record compels the conclusion that as a result of her employment, excited by no unusual or extraordinary effort or activity on her part, the pain from which she now suffers commenced and gradually became worse. The question presented, therefore, is whether or not an injury aggravated gradually by the nature of the employment and not an occupational disease, without the happening of any specific occurrence which might be labeled as an "accident", is compensable under the Workmen's Compensation Law.

Two sections of the Workmen's Compensation Law govern the situation before us. They are:

19 *Del. C.* §2304. Compensation as exclusive remedy.

"Every employer and employee, adult and minor, except as expressly excluded in this chapter, shall be bound by the provisions of this chapter respectively to pay and to accept compensation for personal injury or death by

accident arising out of and in the course of employment, regardless of the question of negligence and to the exclusion of all other rights and remedies."

19 *Del. C.* § 2301.

" 'Injury' and 'Personal injury' mean violence to the physical structure of the body, such disease or infection as naturally results directly therefrom when reasonably treated, and compensable occupational diseases arising out of and in the course of the employment;"

In *Hendrickson v. Continental Fibre Co.*, 3 *W. W. Harr.* 304, 136 *A.* 375, the Superior Court, in disposing of a demurrer which raised the question of whether the occupational disease[2] for which damages were sought in that action was compensable under the Workmen's Compensation Law, considered the meaning of the above sections of that law. It was alleged in the declaration that the injury complained of was not caused by violence to any of the tissues of the body. The Superior Court, therefore, concluded that the injury for which damages were sought was not compensable under the Workmen's Compensation Law.

In defining compensable accidental injuries, the Superior Court held that only those injuries resulting from accidental violence to the physical structure of the body were compensable and that an accident within the meaning of the Workmen's Compensation Law was an event happening at a certain time, or place, or fixed by a certain circumstance. It was further held that an idiopathic disease which was not traceable to any violence to the physical structure of the body was not compensable.

In *Philadelphia Dairy Products Co. v. Farran, supra,* the Supreme Court approved the rule of the *Hendrickson* case with respect to compensable accidental injuries. The court points out that there can be no "accident" unless there is a sudden or unexpected event happening at a certain time or place. The court

---

[2]At the time of this decision, occupational diseases as such were not compensable under the Workmen's Compensation Law.

then concluded that an ice cream salesman, who, in the absence of a truck driver, delivered fifteen large containers of ice cream to a customer and immediately thereafter had the first symptoms of a heart disease, had suffered a compensable injury. The court seems to reason that the claimant having been injured while performing unusual work requiring unusual exertion, was entitled to compensation.

In somewhat similar circumstances, the Superior Court has followed the lead of the *Philadelphia Dairy Products Co.* case and has allowed compensation for injuries caused by unusual exertion. *Cf. Gray's Hatchery & Poultry Farms, Inc., v. Stevens, Del. Super.,* 81 *A.* 2d 322, and *Walsh v. Diamond State Brewery, Del. Super.,* 82 *A.* 2d 740.

Appellant contends that the grafting upon the rule of the *Hendrickson* case of the test of usual or unusual exertion in determining whether an accident had occurred cannot be supported in logic and was, therefore, wrong. However, in this cause, the question is not before us. In the instant cause there is no evidence at all that the appellee was doing other than her usual work, or that she was forced to exert any unusual amount of effort on January 26, 1951. She makes no such contention, and in fact is precluded from so contending by testimony offered in her behalf. Consequently, we think the cause is to be decided by an application of the rule of the *Hendrickson* case.

Therefore, in order for the appellee to recover compensation in this cause, the record must establish that she suffered an injury, and that that injury was the result of an accident. We have carefully reviewed the record and reluctantly must conclude that there is nothing contained in it to justify the conclusion that she suffered an accident in the course of her employment.

It seems plain to us from the appellee's own testimony and from the testimony of the medical experts, that she suffered from a condition common among people of middle age; that the usual effort required of her aggravated this condition; and that such aggravation continued, until finally, on January 26, 1951, it made

itself manifest by pain symptoms. The record discloses no event or occurrence on that day out of the usual which can be pointed to as that which caused the injury. It seems apparent to us, from the record, that the appellee's injury falls within the category of an idiopathic disease unaccompanied by and unrelated to injury by accident.

For the foregoing reasons, the judgment of the Superior Court affirming the award of compensation will be reversed with instructions to enter a judgment reversing the award of compensation by the Industrial Accident Board.