**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

KELLY SMITH,             )
)
       Appellant       )
)
       v.              )     C.A. No.: N25A-04-008 SSA
)
WELLS FARGO BANK, N.A.,   )
)
       Appellee      )

Submitted: October 15, 2025
Decided:  January 6, 2026

## MEMORANDUM OPINION AND ORDER

The parties appeared before the Industrial Accident Board seeking a *de novo* determination after a Utilization Review of the "reasonableness and necessity of the recommended … surgery to the cervical spine."[1]  The dispute in this case involves the appropriate diagnosis; Employer's expert determined Claimant suffers cervical radiculopathy, while Claimant's expert found cervical instability.  Both experts appear to agree surgery would be reasonable if the diagnosis is cervical instability.  Ultimately, the Board accepted the opinion of the Employer's expert; however, it appears complete medical records were not supplied to this expert.  Specifically, employer's expert never saw the X-ray central to the opinion of

---

[1] *Smith v. Wells Fargo Bank, N.A.*, IAB Hearing No. 1541035 (Mar. 19, 2024), at 3.  The shoulder procedure is not subject to this appeal.

Claimant's expert. Because the Board's decision does not address that significant issue, the Court must remand the matter.

### *Factual and Procedural History*

Kelly Smith was injured at work in 2023.[2] She received medical treatment. On August 21, 2024, Claimant was first seen by Dr. Eskander, at which time she underwent an X-ray. Dr. Eskander also reviewed a prior MRI study. The X-ray results were added to the medical records as an addendum. That X-ray noted 12 degrees and 4 mm of instability on flexion and extension. As a result, Dr. Eskander recommended surgical intervention and fusion. Surgery took place on September 4, 2024. This Court has been provided a copy of an Addendum from Dr. Eskander which is dated August 22, 2024, and details "X-rays with 12 degrees and 4 mm of instability noted upon flexion and extension."[3]

Employer sought a Utilization Review[4] as to this procedure on October 15, 2024. The Utilization Review determined this surgical intervention was not

---

[2] This case came before the Board as a *de novo* appeal of a Utilization Review determination, whose "purpose … shall be the prompt resolution of issues related to treatment … for those claims which have been acknowledged to be compensable." *See* 19 *Del. C.* § 2322F(j).

[3] *See* Claimant-Below/Appellant's App. to Opening Br. on Appeal, D.I. 12, at 367.

[4] "Utilization review provides a mechanism for employers and their workers' compensation carriers to challenge proposed and provided health care services relating to compensable work injuries." *This and That Servs. Co. Inc. v. Nieves*, 303 A.3d 1220, 1223 (Del. 2023) *citing* 19 *Del. C.* § 2322F. The purpose of a utilization review is "to evaluate the quality, reasonableness and/or necessity of proposed or provided health-care services for acknowledged compensable claims." *This and That Servs. Co.,* 303 A.3d at 1228.

reasonable or necessary.[5]  The letter decision on Utilization Review for this procedure focused on cervical radiculopathy.  The decision on Utilization Review does not reference cervical instability, even as it discusses Dr. Eskander's findings.  The Utilization Review was appealed to the Board with a hearing which took place on February 25, 2025.

The parties stipulated that Claimant's injuries were work-related.[6]  Relevant for this appeal, the "only issue for the Board is the reasonableness and necessity of the surgery to the cervical spine…."[7]  On this issue, Claimant bears the burden of proof.

### *Testimony and Arguments Before the Board*

Dr. Eskander is an orthopedic surgeon who specializes in spine surgery.[8]  Dr. Eskander saw Claimant and she described "pain in the neck that radiates to the right arm."[9]  During the initial visit, Dr. Eskander reviewed past imaging studies and took X-rays.[10]  Dr. Eskander testified that during the spine surgery, he noted "the level was unstable so the bones were moving abnormally, and that was pretty

---

[5] *See id.* at 368.
[6] Stipulation of Facts, D.I. 19, at 1.
[7] *Id.* at 2.
[8] Dep. Eskander, D.I. 12, at4.
[9] *Id.* at 6. {Eskander dep. test]
[10] *Id.* at 7–8.

revealing for what we had seen on the X-ray…. that was kind of the main finding that was noted during the surgery."[11]

Dr. Schwartz, also an orthopedic surgeon, was deposed by telephone just a few days after Dr. Eskander. When asked about Dr. Eskander's addendum referencing the X-ray on direct examination, Dr. Schwartz stated:

> Well, I find that very interesting because I believe that's going to be the focus of some of my questioning by opposing counsel. First of all, I never had that record, which is surprising to me, when I initially got my documentation. I only see that record when I received more information from you recently….[12]

This issue arose again, as predicted, on cross-examination:

> Q. I want to talk to you about the initial visit with Dr. Eskander and his review of the x-rays that showed instability on flexion and extension. You said you did not review any of those reports or studies, correct?
> A. Yes, that's correct.
> Q. Okay. But you had this record when you evaluated Ms. Smith in January of 2025, correct?
> A. I don't believe so. I didn't have it at the time of my June 20th, 2024, and I believe I just got it recently….
> Q. But, Doctor, it's the first record of Dr. Eskander. It's the one you've talked about. It's in that record.
> A. My original package did not have that record….This addendum note was not in my original package.[13]

---

[11] *Id.* at 33.
[12] *Id.* at 45.
[13] *Id.* at 97–98.

Dr. Schwartz received the addendum note, which formed the entire basis of Dr. Eskander's opinion on cervical instability on the same day as his deposition.[14] During his deposition, Dr. Schwartz stated "[t]here's no evidence of acute cervical instability. He [Dr. Eskander] doesn't document it in his original record that I have."[15] Dr. Schwartz also testified: "his [Dr. Eskander] original note from August 21, 2024, for which he recommends the surgery, is absent of any information on cervical instability. He then has that note and then he does do surgery, but his surgical pre-op and postoperative diagnosis is nothing to do with cervical instability…."[16]

Dr. Schwartz referenced a post-surgical note from Dr. Eskander linking the reason for the surgery to cervical radiculopathy.[17] This confusion continued as Dr. Schwartz testified and it became clear he never saw the X-ray forming the basis of Dr. Eskander's opinion:

> Q: Sir, it's on the record from August 21. It's not a separate note.
> A. It is not. It is – it's noted as an addendum. I – that's all I could tell you. It wasn't in my original package.
> Q. It says addendum, August 22nd, 2024. So it's the next day, and its attached to – it's not attached, it's in the actual August 21 note, right?
> A. Again, Mr. Fredericks, it's not in the record that was sent to me. I have a two-page record from August 21, 2024, and that addendum was never sent to me at the time of my original evaluation.

[14] *Id.* at 47 ("I don't know what to make of this. Again, it came to me just recently."). *See also id.* at 99 ("I believe I got the depo package, which included that – well, I had it mailed to me, but I got the final complete package earlier this morning.").
[15] *See id.* at 100.
[16] *See id.* at 102.
[17] *See id.* at 49.

Q. Okay. When you got this note, did you reach out this [sic] Mr. Davis and say, Mr. Davis, I need to see these x-rays because instability in the cervical spine can justify a surgery?
A. Again, I noticed it earlier, I believe yesterday, and we talked about the fact that I believe that you were going to bring this up as a crucial part of your questions to me, but I don't have those films.[18]

Dr. Schwartz acknowledged that instability could be a reason for spine surgery.[19] The presentation of evidence before the Board on this issue was entirely based on the deposition testimony of these two doctors.

### *The Board's Finding*

The Board found that the cervical fusion surgery was not reasonable or necessary. In summarizing Dr. Eskander's testimony, the Board stated "Dr. Eskander considered the X-ray findings showing instability were more significant than the MRI findings showing darkening of the disc at the C5-6 level."[20] As for Dr. Schwartz, the Board summarized his testimony related to cervical instability, acknowledging "Dr. Schwartz did not see Dr. Eskander's Addendum first indicating instability of up to 12 degrees at the C-5-C6 level until he received the documentation before his second evaluation of Claimant.… Before the addendum, nothing about instability was recorded."[21]

---

[18] *See id.* at 97–98.
[19] *Id.* at 99. *See also id.* at 108 *"[I]f there's instability producing radicular pain with extension of the neck, sure, that would be potentially reasonable.").
[20] *Smith v. Wells Fargo Bank, N.A.*, IAB Hearing No. 1541035 (Mar. 19, 2024), at9.
[21] *Id.* at 16.

Regarding Dr. Eskander and cervical instability, the Board found "the listed surgical pre-op and postoperative diagnoses have nothing to do with cervical instability of the spine but mentioned cervical radiculopathy."[22]  The Board went on to detail Dr. Schwartz's testimony regarding a lack of notation in the records demonstrating cervical instability.  Next, the Board addressed the lack of objective findings for cervical radiculopathy.  Then, the Board concluded it would accept the opinion of Dr. Schwartz over Dr. Eskander in finding this surgery was not reasonable or necessary.

Claimant moved for reargument.  Claimant asserted that the Board's decision focused only on cervical radiculopathy and did not make any finding as to cervical instability.  Employer opposed.  In part, Employer argued Dr. Eskander's operative note did not mention instability as an indication for surgery.  The Board denied the motion to reargue, finding "[a]lthough Dr. Eskander testified[] he was concerned about instability during Claimant August 21, 2024 visit, the record of that date does not mention instability."[23]  This appeal followed, with Claimant asserting the Board failed to comply with its "statutory duty of making a

---

[22] *Id.* at 22.

[23] *Smith v. Wells Fargo Bank, N.A.*, Order on Employer's Mot. for Reargument, IAB Hearing No. 1541035 (Apr. 16, 2025), at 2.

determination on an undisputed issue presented at the hearing"[24] and that the

Board's decision is not supported by substantial evidence.

### *Standard of Review on Appeal from the Industrial Accident Board*

"[T]he sole function of the Superior Court….is to determine whether or not

there was substantial competent evidence to support the finding of the Board, and,

if it finds such in the record, to affirm the findings of the Board."[25]  "Only where

there is no satisfactory proof in support of a factual finding of the Board may the

Superior Court, or this Court for that matter, overturn it."[26]  "If there is substantial

supporting evidence for the Board's decision and no mistake in law, the decision

will be affirmed."[27]  The Delaware Supreme Court has made it clear that

"[s]ubstantial evidence means such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion."[28]

On appeal, "this Court will not weigh the evidence, determine questions of

credibility, or make its own factual findings."[29]  However, where the Board fails to

make adequate subordinate findings to support its ultimate conclusion, the Court

---

[24] Claimant-Below/Appellant's Opening Br. on Appeal, D.I. 12, at 1.
[25] *Johnson v. Chrysler Corp.*, 213 A.2d 64, 66 (Del. 1965).
[26] *Id.* at 67.
[27] *Turner v. Bennett's Action Glass*, 1998 WL 733763, at *2 (Del. Super.) *citing Longobardi v. Unemployment Ins. Appeal Bd.*, 287 A.2d 690, 692 (Del. Super. 1971).
[28] *This and That Servs. Co. Inc. v. Nieves*, 303 A.3d 1220, 1226 (Del. 2023) *quoting Christiana Care Health Servs. v. Davis*, 127 A.3d 391, 394 (Del. 2015).
[29] *Person-Gaines v. Pepco Holdings, Inc.*, 981 A.2d 1159, 1161 (Del. 2009).

will reverse.[30]  This Court will only find an abuse of discretion sufficient to reverse the Board if the decision "has 'exceeded the bounds of reason in view of the circumstances.'"[31]  Where there is a "conflict in the evidence, it [is] the duty of the Board to determine whose testimony it deemed most worthy of credit, and to state its conclusions of fact accordingly."[32]  In order to assess whether the Board abused its discretion, this Court should examine whether that decision "'exceeded the bounds of reason in view of the circumstances, [or] so ignored recognized rules of law or practice as to produce injustice.'"[33]

## *Analysis*

According even to Dr. Schwartz, the findings described by Dr. Eskander regarding the X-ray as to cervical instability would have been significant.  It is not clear why such significant objective information was not provided to Dr. Schwartz for evaluation.   In *Zayas,* the Supreme Court addressed an expert's refusal to answer questions regarding treatment by another doctor.  The Court concluded the expert's "opinion was based upon an incomplete factual predicate."[34]  The Supreme Court held that reliance on that doctor's opinion by the Board "violated

---

[30] *Bd. of Pub. Educ. in Wilmington v. Rimlinger*, 232 A.2d 98, 100 (Del. 1967).
[31] *Person-Gaines*, 981 A.2d at 1161 *citing Stanley v. Kraft Foods, Inc.*, 2008 WL 2410212, at *2 (Del. Super. 2008).
[32] *Le Tourneau v. Consol. Fisheries Co.*, 51 A.2d 862, 867 (Del. 1947).
[33] *Zayas v. Delaware*, 273 A.3d 776, 786 (Del. 2022) *quoting Roos Foods v. Guardado*, 152 A.3d 114, 118 (Del. 2016).
[34] *Zayas*, 273 A.3d at 788.

fundamental notions of fairness."[35] *Zayas* constituted extreme conduct—conduct at a level that is certainly not present in this case.

Where there is a "conflict in the evidence, it [is] the duty of the Board to determine whose testimony it deemed most worthy of credit, and to state its conclusions of fact accordingly."[36] The Board expressly made a finding as to whose opinion it would accept. However, it is unclear to the Court whether, or how, the Board reconciled the issue of Dr. Schwartz's inability to review the X-ray that was central to Dr. Eskander's opinion. To be precise, the Board noted that Dr. Schwartz did not have the X-rays showing cervical instability.[37] Significantly, the Board's decision states "he [Dr. Schwartz] received the final complete deposition package the morning of his deposition when he was informed of the instability found on the X-ray. Acute instability could be a reason for performing cervical surgery."[38]

The Board's decision is unclear as to how it viewed Dr. Schwartz's opinion in light of the fact that his opinion did not account for the singular objective measure citing cervical instability by Dr. Eskander. And, further, the decision is unclear as to what importance the Board placed on the X-ray itself. The Board discussed Dr. Schwartz's testimony regarding a lack of notation by Dr. Eskander

---

[35] *Id.*
[36] *Le Tourneau v. Consol. Fisheries Co.*, 51 A.2d 862, 867 (Del. 1947).
[37] *Smith v. Wells Fargo Bank, N.A.*, IAB Hearing No. 1541035 (Mar. 19, 2024), at18.

regarding cervical instability—but did not reconcile Dr. Schwartz's testimony with the apparent lapse of medical records provided to him.

Claimant bears the burden of proof. Dr. Schwartz was not her proffered expert and what he relied upon to refute the opinion of Claimant's expert is unclear. The testimony in this case suggests the medical records may be voluminous; therefore, the inadvertent omission of some record is conceivable. Nevertheless, the Court is concerned with the fundamental fairness of the Board's reliance upon the opinion of an expert who admittedly had not seen the singular piece of objective evidence upon which the opposing expert has relied in refuting the reasonableness and necessity of this surgical procedure. Perhaps such reliance is fair based on the totality of the record—but the Court cannot so conclude on this record. For the foregoing reasons, this matter is REMANDED.

**IT IS SO ORDERED**.


/s/**Sonia Augusthy**
Judge Sonia Augusthy