McCormick Transportation Company, a corporation of the State of Delaware, and Michigan Mutual Liability Company, a corporation of the State of Michigan, Appellants, v. Joseph J. Barone, Appellee.

(*June* 4, 1952.)

TERRY, J., sitting.

*Herbert L. Cobin* for appellants.

*Clement C. Wood* (of Young and Wood) for appellee.

Superior Court for New Castle County, No. 343, Civil Action, 1951.

TERRY, J.:

Joseph J. Barone, called claimant, has been continuously employed by McCormick Transportation Co., a Delaware corporation, called McCormick, since 1946. The duties and responsibilities relating to the employment embrace those that would ordinarily be expected of a truck driver; that is, loading shipments of goods upon trucks, transporting said shipments, and unloading the same at the point of destination.

The claimant contends that on December 1, 1950, he sustained an injury to his back while engaged in the regular course of his employment; that is, unloading baled cotton from his truck—the bales weighing approximately 450 pounds each.

The claimant has alleged in his petition for compensation that the injury of December 1, 1950 aggravated a pre-existing back injury which he sustained in 1946, and directly resulted in a rupture of certain intervertebral discs necessitating general medical care and surgery in order to be cured thereof.

The evidence before the Board below consists only of the testimony of the claimant, together with the admission into evidence of an exhibit which purports to be a written statement made and signed by him subsequent to his alleged injury on December 1, 1950. This statement contains in substance a case history including the nature and extent of his injury, together with items indicating the amount expended by him in order to be cured thereof.

When the testimony of the claimant, together with his written statement, is considered in the light of the allegation in his petition for compensation, certain conflicts become apparent. By reason of these conflicts a factual question is presented: Did the claimant's injury of December 1, 1950 aggravate a pre-existing back injury sustained in 1946 resulting in precipitating a rupture of the intervertebral discs in his back, or did the rup-

ture of the intervertebral discs in his back result directly and entirely from his accident of December 1, 1950 without any connection or relationship to his previous injury of 1946?

Before stating the manner in which the Board below resolved the factual issues a brief resume of the claimant's testimony should be set forth. In substance he testified as follows:

That on December 1, 1950 he was unloading bales of cotton from his truck, each weighing approximately 450 pounds; that in pulling over one of the bales to unload it a sharp pain shot down his leg from the area of his back, which made it necessary for him to get another truck driver to assist him in unloading his truck; that he immediately reported the accident to his employer, McCormick, by telephoning its office in Wilmington and stating to one Frank Corkran that he had been injured and could he have permission to go to a doctor of his own choice, to which Corkran replied that he could; that he finished his day's work then went to see Dr. George in Wilmington; that he continued his work or employment while under the care of Dr. George until January 17th, at which time he was referred by Dr. George to Dr. Eaton, a Philadelphia surgeon; that Dr. Eaton diagnosed his injury as being herniated discs in his back, and, in accordance with said diagnosis, admitted the claimant to surgery at the Osteopathic Hospital in Philadelphia; that Dr. Eaton operated on the twenty-second day of January, 1951; that he remained at the hospital until February 2, 1951, at which time he was discharged; that he incurred the following bills in order to be cured of his injury: Osteopathic Hospital $383.22, Dr. Eaton $450.00, Dr. Sterrett $10.00, Dr. George $42.00, Dr. Walsh $50.00, S. A. U. R. (for a belt) $35.00.

In the statement made and signed by the claimant, which is in evidence, he stated in part as follows:

"The sole cause of all my trouble is the fall sustained in the freight car on June 10, 1946. The reason I say this is that except for that single fall I have not experienced anything unusual in performing the duties of my employ-

ment. Since the fall in the freight car I have not slipped, tripped or fallen or had any sudden or unusual strain. I have been able to perform all of my work in the regular and usual way."

Predicated upon the testimony of the claimant, together with his written statement, the Board found as follows:

*"Conclusion of Facts*

"1. In accordance with the provisions of *The Delaware Workmen's Compensation Law of* 1917, *as amended,* Joseph J. Barone and the McCormick Transportation Company were resepectively bound to pay and receive compensation.

"2. On December 1st A. D. 1950 Joseph J. Barone met with an accident arising out of and in the course of his employment with the McCormick Transportation Company.

"3. Joseph J. Barone began to lose time from his work as a result of his accident of December 1st, A. D. 1950, on January 17th, A. D. 1951.

"4. While pulling over a bale of cotton goods he ruptured intervertebral discs in his back.

"5. The moving of the bales of cotton goods was the precipitating factor of the herniated discs of Joseph J. Barone.

"6. No medical or other evidence was introduced to contradict the testimony of the plaintiff."

They further found under the heading *"Ruling of Law"* the following:

"The former accident of Joseph J. Barone or the similarity of the work in which he was engaged are immaterial where the accidental injury resulting in violence to the physical structure of the body was the proximate cause of his physical disability."

Predicated upon the foregoing finding of facts the Board concluded that the claimant was entitled to compensation and entered an order in accordance with the provisions of the statute providing therefor, including in said award the medical, surgical and' hospital expenses of the claimant, together with his expenses for medicines and supplies, as heretofore indicated.

McCormick has appealed from the decision below to this Court. Its objections thereto may be summarized in general terms as follows:

(1) That the injury, or the extent thereof, alleged to have been sustained by the claimant on December 1, 1950 has not been adequately proved, but, if found to have been proved, no causal connection has been established between the performance of any act by the claimant on that date and the injury complained of.

(2) That the Board had before them no evidence to .support an award for medical and surgical expenses, including medicines and supplies.

Under the first objection two arguments are made: (a) that the occurrence of an injury which results from the doing of usual work in the usual manner does not constitute an injury by accident arising out of employment within the meaning of the *Compensation Act;* (b) Conceding *arguendo* its position under (a) to be in error, then under the circumstances of the present case the mere testimony of the claimant alone that he suffered an injury by accident which resulted in a rupture of certain intervertebral discs is inadequate to furnish a basis for the Board's finding below.

██ McCormick's objection under (a) is without merit. *Gray's Hatchery & Poultry Farms v. Stevens,* 7 *Terry* 191, 81 *A.* 2d 322.

██ McCormick's objection under (b) is well founded. In order to award the claimant compensation in the present

case, two essential requirements must be met: (1) Adequate proof establishing the injury and extent thereof, and (2) the causal connection between the act done by the claimant on December 1, 1950 and the injury complained of. In respect to both requirements (a and b) the burden of proof rests entirely upon the claimant.

I find the record in the present case to be completely devoid of any medical testimony indicating the claimant's injury or the extent thereof resulting from the incident of December 1, 1950, and most certainly his testimony alone in this respect is thoroughly inadequate.

In cases where the injury and extent thereof is open to view, necessity should not require medical testimony in order to establish the same. On the other hand, where the injury is internal, thus concealed, then medical testimony becomes essential in order to properly determine that an injury in fact has occurred and the extent of such injury.

Once the claimant's injury in the present case is properly established by medical testimony, then the causal connection between the act and the injury must be shown. This, of course, may be done in certain cases independent of medical opinion, depending always upon the circumstances presented. *Collins & Ryan v. Hudson*, 6 *Terry* 438, 75 *A*. 2d 261.

Conceding *arguendo* that the Board below resolved the factual issues relating to the proximate cause of the claimant's injury in a proper fashion, they did not have before them competent and adequate testimony to determine the character or extent thereof, and for this reason alone the decision below cannot be sustained.

McCormick's second objection relates to the award by the Board to the claimant for certain medical and surgical expenses, including medicine and supplies. The portion of the award in this respect was predicated upon the provisions of *Section* 8 (b) of the *Compensation Act*, being *Section* 6078 of the *Code* of 1935, *as amended.*

"(b) During the first thirty (30) days of the injury the employer shall furnish reasonable surgical, medical, and hospital services, medicine, and supplies, as and when needed, unless the employee refuses to allow them to be furnished by the employer. The costs of such services, medicines, and supplies shall not exceed the regular costs for such services, medicines and supplies, and in case of controversy the costs shall be subject to the approval of the Industrial Accident Board. If the employer shall, upon application made to him, refuse to furnish reasonable surgical, medical, and hospital services, medicines, and supplies, the employee may procure the same and shall receive from the employer the reasonable cost thereof within the above limitations." 46 *Del. Laws, c.* 27.

Subdivision (c) permits the Board, upon application, to require the furnishing of additional medical attention for a further period of time. Subdivision (f) gives the employee the privilege of applying to the Board in writing for permission to employ a physician or surgeon of his own selection. If the Board approves his application, he is entitled to receive from the employer the reasonable cost of the service of the physician or surgeon so selected by him.

The foregoing provisions were enacted for the mutual benefit of both the employer and the employee. The legislative purpose was twofold: (1) to insure the employer against unreasonable charges and against fraudulent claims, and (2) to insure at all times adequate medical assistance to the employee. The pertinent language of the Act is clear: "If the employer shall, upon application made to him, refuse to furnish reasonable surgical, medical, and hospital services, medicines, and supplies, the employee may procure the same and shall receive from the employer the reasonable cost thereof within the above limitations." Thus, while the employee is protected at all times in respect to necessary medical aid, nevertheless, he must request or demand such assistance from the employer and the employer must refuse to render such assistance before the employee is at

liberty to incur such expenses on his own at the expense of the employer, or, in the absence of a direct request and refusal for medical aid, then the circumstances presented must be such as to establish a waiver by the employer in this respect, which would constitute, in effect, an implied consent by the employer for the employee to choose his own medical assistance and thus be bound thereby.

 McCormick in the present case contends that the claimant did not properly establish before the Board below that a request was made by him for medical aid and that McCormick refused to give such aid at any time, and, therefore, under the provisions of the statute the Board erred in awarding to the claimant any amount covering such expenses. I think McCormick's objection in this respect is well taken. It is premised upon the fact that the record discloses that the claimant at the time of his alleged injury on December 1, 1950 called by phone the office of McCormick and talked to one Corkran to whom he stated that he had been injured and could he go to a doctor of his own selection, to which Corkran replied that he could. McCormick asserts that the burden of proof is and was upon the claimant to establish that Corkran's association with McCormick, if any, was sufficient for him to bind it in this regard; otherwise, there was no proper request for medical aid by the claimant insofar as McCormick is concerned, and, therefore, there could be no waiver of McCormick's statutory right under the provisions of the statute.

The decision below is silent upon what ground the Board based the portion of their award relating to medical aid. The Board made no finding of fact whatsoever in this respect. No testimony concerning Corkran's position with McCormick and his authority thereunder appears in the record. Conjecture and speculation cannot be resorted to in determining that such an agency did in fact exist, and the burden of establishing the same rests upon the claimant. If Corkran was not an agent authorized by McCormick to waive its statutory right to the claimant, then, of course, McCormick would not be bound by any commitments

made by Corkran. The record likewise is devoid of any evidence connoting knowledge on the part of McCormick of circumstances that could be said to constitute notice on its part of the medical expenses being incurred by the claimant which might be said to constitute an implied waiver of its statutory right to select and provide the claimant with medical aid of its own choice.

For the foregoing reasons the portion of the award to the claimant for his medical, surgical and hospital expenses, including medicines and supplies, cannot be sustained.

The decision of the Board below is reversed. An order will be signed remanding the record, with directions to the Board below to reopen the case and conduct a further hearing, at which time the claimant be given the opportunity to produce additional testimony or evidence in order to cure the deficiencies as hereinabove pointed out in regards to his claim for compensation.